UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| SEATTLE PACIFIC UNIVERSITY, | NO.  3:22-CV-05540 |
| Plaintiff, | |
| | COMPLAINT |
| vs. | |
| ROBERT FERGUSON, in his official capacity as Attorney General of Washington, | |
| Defendant. | |

## NATURE OF THE ACTION

1.      Seattle Pacific University is a Christian university fully committed to engaging the culture and changing the world by graduating people of competence and character, becoming people of wisdom, and modeling grace-filled community. For more than 130 years, Seattle Pacific has carried out its mission of Christian education and service in the Pacific Northwest.

2.      Now that mission is under fire—and government investigation—by Washington's attorney general.

3.      Seattle Pacific University, like many religious universities, is navigating complex issues regarding Christian teachings on justice, love, marriage, and human sexuality. Seattle Pacific holds to traditional Christian beliefs regarding marriage and sexuality, in alignment with the Free Methodist Church.

COMPLAINT
CASE NO. 3:22-CV-05540

Page 1

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

4.      As part of its religious commitment, Seattle Pacific expects its faculty, staff and leadership to agree with the University's statement of faith and to live out that faith as a model for others, including by living according to the University's religious teachings on marriage. Seattle Pacific relies on its faculty, staff, and leadership to provide a Christian higher education by integrating faith and learning.

5.      The U.S. Constitution recognizes and protects the right of Seattle Pacific University to decide matters of faith and doctrine, to hire employees who share its religious beliefs, and to select and retain ministers free from government interference.

6.      Defendant does not recognize that right. Despite the Constitution's clear prohibition on interference in matters of church governance, including entangling investigations of religious employment decisions and the selection of ministers, Washington's attorney general has launched a probe that does just that.

7.      The attorney general has taken the position that policies like Seattle Pacific's, which ask leaders to follow a religious organization's teachings, are unlawful and unwelcome in Washington.

8.      The attorney general is wielding state power to interfere with the religious beliefs of a religious university, and a church, whose beliefs he disagrees with. He is using the powers of his office (and even powers not granted to his office) to pressure and retaliate against Seattle Pacific University. But governmental attempts to probe the mind of a religious institution are a blatant form of entanglement barred by both Religion Clauses of the First Amendment. Such "[s]tate interference … obviously violate[s] the free exercise of religion," and such "attempt[s] by government to dictate or even to influence [religious] matters ... constitute one of the central attributes of an establishment of religion." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

9.      The Constitution prohibits government retaliation against speech and religious exercise. But in retaliation for Seattle Pacific's religious speech and exercise,

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

the attorney general has launched a probe seeking information on internal religious matters and decisions, detailed review of religious hiring practices, communications with ministerial employees, and even the selection of the University's president, senior leadership, and board of trustees. The attorney general's probe inquires into confidential religious matters and is beyond the scope of authority granted under state law and the federal constitution.

10.     Without relief, the University will suffer irreparable harm.

## JURISDICTION AND VENUE

11.     This action arises under the Constitution and laws of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

12.     This Court has personal jurisdiction over Defendant because Defendant is a state official, and state officials have their principal place of business in Thurston County, Washington.

13.     The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

14.     Venue lies in this district under 28 U.S.C. §§ 1391(b)(1) and (2).

## IDENTIFICATION OF PARTIES

15.     Seattle Pacific University ("the University") is a private institution of higher education affiliated with the Free Methodist Church USA.

16.     Robert Ferguson is the attorney general of the State of Washington, and is sued in his official capacity only.

## FACTUAL ALLEGATIONS

*1.     Seattle Pacific University and Its History of Faith and Service*

17.     Seattle Pacific University is a private, Christian liberal arts university in Seattle. It is committed to graduating people of competence and character, becoming people of wisdom, and modeling a grace-filled community.

COMPLAINT
CASE NO. 3:22-CV-05540

Page 3

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

18.     Seattle Pacific University has long served the Seattle community. It is committed to a transformative and holistic student experience, creating an environment where students can thrive. It has created programs that help students who lack resources to find affordable meals, hosted events to educate the local evangelical community on racial justice, and repeatedly hosted a community of men and women experiencing homelessness. Seattle Pacific was the first university to offer discounted tuition to eligible community-college students wanting to transfer to a university.

19.     The University is committed to serving a diverse community. It grounds the work of diversity in the gospel of Jesus Christ. Seattle Pacific University was originally incorporated as "Trustees of Seattle Seminary" by articles of incorporation dated June 23, 1891. As stated in the original articles of incorporation, the purpose of the corporation is to "found, maintain, conduct and operate an institution of learning ... under the auspices of the Free Methodist Church."

20.     The Free Methodist Church is an evangelical Protestant denomination with ministries in the United States and in 100 countries around the world. The denomination is a longstanding member of the National Association of Evangelicals. Theologically, the Free Methodist Church is Wesleyan Arminian and can best be described by these five value statements entitled "The Free Methodist Way": Life--Giving Holiness, Love-Driven Justice, Christ-Compelled Multiplication, Cross-Cultural Collaboration, and God-Given Revelation. Free Methodists believe in the historic central tenets of Christianity as expressed in the Apostles' Creed and the Nicene Creed.

21.     The Free Methodist Church was founded in 1860 by B.T. Roberts, a Methodist Episcopal minister. Roberts was an abolitionist who believed that all people are made in the image of God and possess inherent dignity. The name "Free" Methodist derives from Roberts' opposition to slavery, as well as clergy domination,

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

secret societies, pew rents, and other practices he deemed contrary to the teachings of the Bible and John Wesley.

22.    Free Methodists believe God's salvation is available to all. Free Methodists emphasize acts of mercy and Christian living as an outward expression of God's inward transformation. Such outward expression is a manifestation of the Holy Spirit's work and critical to evangelism.

23.    The Free Methodist Church ordains clergy, but it is not a "high" church with a strong clergy-laity distinction; it expects all Christians to live out and model the faith. "Free" of clergy domination, is reflected, for example, in Free Methodist structure, where lay Christians have equal representation in the denomination's government. For example, the Board of Administration must be made up of equal numbers of clergy and lay members.

24.    Historically, Free Methodists spoke out against the institutions of slavery and class distinctions. Free Methodists reject anything in law, persons, or institutions that violates the dignity of persons created in God's image. Free Methodists are committed to the dignity and worth of all humans, regardless of gender, race, ethnicity, color, socioeconomic status, disability, or any other distinctions, including membership in the LGBTQ community. Free Methodists respect all persons as made in God's image and deserving of fairness and equity. Free Methodists regard racism as a particularly egregious affront to the dignity and worth of persons because all persons are created in the image of God. They stand against the evil of racism and oppose it in all its forms.

25.    Free Methodists believe sexual intimacy is a gift from God and is a great blessing in the sanctity of marriage between one man and one woman. They believe that premarital sexual intimacy robs the marital union of this exclusive bond and that extramarital intimacy is adultery and betrays the marriage bond. Free Methodists further believe that same-sex sexual intimacy is not in keeping with God's best

COMPLAINT                                    Page 5
CASE NO. 3:22-CV-05540

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

intention for the human family. These views on sexual intimacy have been the consistent position of the Free Methodist Church since its founding in 1860.

26.    The University began its existence associated with the Free Methodist Church, and that relationship continues to this day. Free Methodists believe strongly in Christian liberal arts education; within forty years of its 1860 founding, the church had established a number of colleges, including Seattle Pacific University. The Free Methodist Church recognizes the University as one of the church's denominational institutions. This means it is an educational institution of higher education whose commitments are consistent with the history, theology, mission, and character of the Free Methodist Church.

27.    The University's President must also be a member of the Free Methodist Church.

28.    The University's bylaws require at least one-third of all members of the University's Board of Trustees to be members of the Free Methodist Church. Each year, every Trustee must reaffirm the Trustee's "continued commitment to the mission and faith statement of the University . . . ." Bylaws, Article III, Section 6. If a Trustee is unable or unwilling to provide the affirmation, the Chair of the Board of Trustees must take appropriate action, which may include proposing the resignation or removal of the Trustee.

29.    The University has adopted policies, a mission statement, and a statement of faith consistent with its Christian beliefs. SPU's Statement of Faith is structured around four pillars: "historically orthodox, clearly evangelical, distinctively Wesleyan, and genuinely ecumenical." SPU's guiding policies include its religious beliefs about human sexuality, which are included in its employee conduct policies. Those beliefs are explained in more depth in the University's Statement on Human Sexuality, attached as Exhibit B.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

30.     The Statement on Human Sexuality is a statement of religious belief and practice, emphasizing that the University "affirm[s] the fundamental worth of all human persons," and describing the University's beliefs about "God's plan for human flourishing," including marriage, singleness, family, and the treatment of others. It rejects sexual harassment and sexual exploitation as harmful to others, and emphasizes the obligation to "to interact with one another with great responsibility, respect, and with unselfish love." It also states the basis for and the definitions of the University's beliefs about marriage and human sexuality, including that marriage is a covenant between a man and a woman, and that sexual experience is intended between a man and a woman in marriage. The Statement emphasizes that discussions of sexuality and religious belief "must be treated with personal and spiritual sensitivity and with scholarly care."

31.     The University requires all of its regular faculty and its staff (other than student employees and temporary employees) to affirm its Statement of Faith and mission statement, and to also abide by certain lifestyle expectations in keeping with the University's religious beliefs. One of these standards prohibits regular faculty and other employees from engaging in sexual intimacy outside of marriage (with marriage recognized as a marriage between one man and one woman). This view of marriage is the University's sincere religious belief and aligns with the beliefs of the Free Methodist Church.

32.     The University's regular faculty and employees are key to enabling the University to fulfill its religious mission. And part of their role is to express and model a vibrant, growing Christian faith.

33.     The University can fulfill its religious mission only with a faculty of Christians who affirm the University's Statement of Faith, who affirm the University's mission, who live out their Christian faith, and who bring their faith into all aspects of their lives, including their teaching and scholarship.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

34.     If the University changed its employment policies to permit employment of Christians in same-sex marriages, the University would be automatically disaffiliated from the Free Methodist Church. The University would no longer be a denominational institution. Disaffiliation would occur whether the University made this change voluntarily or under compulsion of law. This would result in the loss of a religious affiliation that has existed for over 130 years.

2.     *The Current Controversy*

35.     The Board of Trustees is committed to upholding the University's religious beliefs and values. Within the  University and its faith community, some believe the University should permit covenanted same-sex marriages. Those discussions have and will continue within the Church and at the University. The University understands that these are difficult discussions, and believes they should be carried out in love, within the family of believers who are, with God's help and grace, able to hold the tension of deep disagreement within the strong bounds of a common faith. The University seeks the freedom to hold theological discussions and make determinations of faith, doctrine, and policy without government interference.

36.     The University community has engaged in these discussions and determinations over the past several years. Recently, several public events have brought additional attention to and scrutiny of the University's religious beliefs and practices.

37.     While discussions and determinations were ongoing, in January 2021, Seattle Pacific University was sued by a faculty applicant alleging sexual orientation discrimination. That case (which was settled) sparked debate within the community. In March 2021, the University was discussed, alongside many other evangelical universities, in a lawsuit challenging the  Title IX exemption for religious colleges and universities as unconstitutional. *Hunter v. Dept. of Education*, No. 21-00474 (D. Ore.). That lawsuit remains pending.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

38.     In 2021, some faculty members and students publicly called on the Board to change the University's statement on human sexuality. Faculty members took what was described as a "no-confidence vote" in the Board.

39.     A working group of students, faculty, and trustees came together to study the issue. In May 2022, the group presented its recommendations, which outlined different options available to the University. After this review process, the Board voted to retain its existing employee conduct policies, which are consistent with the Statement on Human Sexuality.

40.     On May 26, 2022, the day following the Board's announcement, students organized a sit-in at the University President's office, calling for changes to the statement on human sexuality. National news outlets ran stories about the controversy on May 30, 2022. *See, e.g.*, *Students protest against Seattle university's ban on hiring LGBTQ employees*, NPR (May 30, 2022, 5:00 AM), https://perma.cc/ED7B-HJNN.

41.     Upon information and belief, some students complained to Washington Attorney General Bob Ferguson, asking that the Attorney General take legal actions against the University's Board of Trustees.

3.     *The Probe*

42.     Just over a week after the media coverage, on June 8, 2022, the office of the attorney general sent a letter to Seattle Pacific University. The letter announces a probe into the University and demands prompt production of voluminous and sensitive internal information on the University's religious policies and their application to any and all faculty, staff, and administrators. A true and correct copy of that letter is attached as Exhibit A.

43.     The letter states that it was sent due to information that the University discriminates based upon sexual orientation, "including by prohibiting same-sex marriage and activity." Ex. A at 1. The letter also seeks information relating to "faculty, staff, or administrators." Ex. A at 2.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

44.     The letter demands sensitive private information regarding hiring decisions, discipline, and employment disputes with "any" faculty, staff, or administrators, including ministerial employees, as defined by *Hosanna-Tabor v. EEOC*, 565 U.S. 171 (2012), and *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).

45.     The letter demands sensitive personal and religious associational data, including the names and contact information of "each prospective, current, or former faculty, staff, or administrator to whom the University applied the policies." Based upon this statement and knowledge of previous investigations, the University believes that the attorney general's office will seek to communicate directly with ministerial employees or prospective, current, or former senior leadership of the University, inquiring into the University's religious and doctrinal decisions, without regard to whether those individuals held ministerial roles at the University.

46.     The letter purports to investigate the discipline of "administrators," which would encompass the University's senior leadership and trustees, investigating their decisions regarding faith and doctrine.

47.     The letter inquires into matters of religious policy and doctrine, and promises further inquiry into how those policies are carried out.

48.     The letter clearly indicates that the attorney general considers "prohibiting same-sex marriage and activity" to be in violation of the law. See id. The First Amendment protects the ability of religious organizations to follow the teachings of their faith on marriage and sexual relationships outside marriage, and to maintain policies consistent with those beliefs. *See, e.g., Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020) (recognizing "the promise of the free exercise of religion enshrined in our Constitution; that guarantee lies at the heart of our pluralistic society," including in employment decisions); *Obergefell v. Hodges*, 576 U.S. 644, 679–80 (2015) ("The First Amendment ensures that religious organizations and persons are given proper

protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths . . . .").

49.     Upon information and belief, the probe has the purpose of influencing the University in its application and understanding of church teaching, and encouraging the University to take one side of a particular question of religious doctrine. The First Amendment's "Religion Clauses protect the right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion," and prohibit "any attempt by government" to even "influence" such matters. *Our Lady*, 140 S. Ct. at 2060 (emphasis added).

50.     The probe is not limited to a single dispute or employee, but seeks to regulate and surveil a religious school's relationships with all its employees and leaders. Nothing in the letter places any constitutional limitation on the probe, including the probe of ministerial employees and administrators, nor even acknowledges the principle of religious autonomy for religious institutions, including the ministerial exception and other constitutional limitations on the attorney general's powers.

51.     The letter closes by asking the University to preserve documents and sign a certification, under penalty of perjury, attesting that it will do so. Attorneys from the attorney general's office subsequently contacted University counsel directly to seek assurances that the University had begun a litigation hold. This certification indicates that the documents requested in the letter are only the beginning, not the end, of the documents that the attorney general will seek during the probe.

52.      The probe interferes with the relationship between Seattle Pacific and the leadership of the Free Methodist Church. For example, the letter seeks information related to "administrators" of the University, which may include the University President and its Trustees. The President must be a member of the Free Methodist Church. The Trustees also include members of the Free Methodist Church and one of

COMPLAINT
CASE NO. 3:22-CV-05540

Page 11

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

the three elected Bishops of the Free Methodist Church.   The probe also seeks documents related to the University's policies and implementation of those policies, which may include communications with the Bishop and with other leaders in the Free Methodist Church.

53.     The University is exempt from Title VII under 42 U.S.C. § 2000e-1(a) and 2 U.S.C. § 2000e-2(e).

54.     The University is not an "employer" under the Washington Law Against Discrimination (WLAD), since it is a religious organization not organized for private profit. Wash. Rev. Code Ann. § 49.60.040.

55.     The letter relies on the WLAD, but makes no mention of the religious exemption to that law. Ex. A at 1. Although the Washington Supreme Court has called the exemption into question under the privileges and immunities clause of the Washington constitution, it has not addressed the federal constitutional questions raised by that decision, and has recognized that "religious institutions are insulated from government intrusion on matters of 'church government,' which includes religious entities' internal management decisions, such as the selection of individuals who play key roles." *Woods v. Seattle's Union Gospel Mission*, 197 Wash. 2d 231, 248 (2021), *cert. denied*, 142 S. Ct. 1094 (2022).

56.     The probe is being carried out without regard to those statutory exemptions or Constitutional limitations.

57.     The probe attempts to interfere with internal religious decision making. For example, it interferes in the University's decisions regarding its relationship with the Free Methodist Church, its relationships with ministerial employees, and its discussions within the University community on the best way to live out its faith commitments.

58.     The University responded to the letter and sought clarification on the scope of the probe and the attorney general's interpretation of federal and state law.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

The attorney general's office has not narrowed the probe, but instead objected that Seattle Pacific did not provide the requested documents. Rather than provide responses to serious questions of law and legal authority, the attorney general's office called them "rhetorical questions." The response also emphasized the Attorney General's personal oversight of the probe.

59.     The attorney general aggressively and selectively prosecutes claims of discrimination by religious individuals and entities, arguing that they are not protected by the state or federal Constitutions. For example, the attorney general argued in favor of penalizing Arlene's Flowers under the WLAD over First Amendment defenses, and used it publicly as an example of the office's priorities. The attorney general has also taken the position in the United States Supreme Court that other religious exemptions and accommodations are unlawful.

60.     Without relief, the University will be subjected to and is already being subjected to a government probe into internal religious matters, interference with internal religious discussions and decisions, interference with the relationship with ministerial employees, and chilling of religious exercise and free expression. Based upon the letter and prior conduct by the attorney general's office, the University believes that if it does not comply with the unconstitutional probe, then it will face serious penalties and litigation against Constitutionally protected actions.

## CLAIMS

### Count I
### Violation of U.S. Const. Amend. I: Free Speech and Free Exercise Clauses
### 42 U.S.C. § 1983
### First Amendment Retaliation

61.     All preceding paragraphs are incorporated by reference.

62.     Government actors may not retaliate against citizens for the exercise of their First Amendment rights.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

63.     Seattle Pacific University is engaged in the constitutionally protected exercise of its religion, its speech, and its religious and expressive association.

64.     The attorney general's probe would deter a person of ordinary firmness from continuing to exercise their First Amendment rights.

65.     The attorney general's actions are a response to Seattle Pacific's constitutionally protected conduct.

### Count II
### Violation of U.S. Const. Amend. I: Establishment and Free Exercise Clauses
### 42 U.S.C. § 1983
### Interference with Church Autonomy / Ecclesiastical Abstention

66.     All preceding paragraphs are incorporated by reference.

67.     Under the Free Exercise and Establishment Clauses of the First Amendment, religious groups have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952).

68.     The University is a religious organization making decisions of internal governance, faith, and doctrine.

69.     Defendant's probe targets and interferes with the University's religious governance and decision making.

70.     Defendant's probe and threats of litigation are an attempt to influence the University's decisions regarding faith and doctrine.

71.     This violates both Religion Clauses, which "protect the right of churches and other religious institutions to decide matters " 'of faith and doctrine' " without government intrusion. . . .  State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an

COMPLAINT
CASE NO. 3:22-CV-05540                    Page 14

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

establishment of religion. The First Amendment outlaws such intrusion." *Our Lady*, 140 S. Ct. at 2060.

72.     Defendant's probe infringes on the University's First Amendment right to govern itself according to religious principles, frame its policies and doctrine, and select its employees and leaders according to those religious principles without government interference.

### Count III
### Violation of U.S. Const. Amend. I: Establishment and Free Exercise Clauses
### 42 U.S.C. § 1983
### Church Autonomy: Improper Investigation into Religious Matters

73.     All preceding paragraphs are incorporated by reference.

74.     Under the Free Exercise and Establishment Clauses of the First Amendment, government may not engage in entangling inquiries into religious matters, since the "very process of inquiry" can "impinge on rights guaranteed by the Religion Clauses." *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979). In *Catholic Bishop*, that meant the National Labor Relations Board did not have jurisdiction over claims of unfair labor practices at religious schools. *See id.*; *see also Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 717-18 (1976) ("detailed review" of church proceeding was "impermissible under the First and Fourteenth Amendments").

75.     Government actors may not intervene in an "internal ecclesiastical dispute and dialogue protected by the First Amendment." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002).

76.     Church autonomy also forbids the "forced disclosure" of religious organizations' "internal communications." *See Whole Woman's Health v. Smith*, 896 F.3d 362, 374 (5th Cir. 2018). Forcing the University to hand over these internal documents would "interfere[] with [their] decision-making processes on a matter of intense doctrinal concern" and intrude on their "self-government." *See id.* at 373.

COMPLAINT
CASE NO. 3:22-CV-05540                    Page 15

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

77.     The University is a religious school engaging in ecclesiastical dispute and dialogue and applying religious belief and doctrine to the selection and retention of employees.

78.     Defendant's wide-ranging probe into religious matters and hiring practices will impinge upon the rights guaranteed by the Religion Clauses.

**Count IV**
**Violation of U.S. Const. Amend. I: Establishment and Free Exercise Clauses**
**42 U.S.C. § 1983**
**Ministerial Exception**

79.     All preceding paragraphs are incorporated by reference.

80.     Defendant's probe seeks to interfere with the relationship between the University and its ministerial employees, including faculty.

81.     Under the Free Exercise and Establishment Clauses of the First Amendment, "[w]hen a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow." *Our Lady*, 140 S. Ct. at 2069.

82.     Defendant's intrusive probe into the University's ministerial decisions infringes on the University's First Amendment right to be free from government interference in its selection and retention of ministerial employees.

**Count V**
**Violation of U.S. Const. Amend. I: Free Exercise Clause**
**42 U.S.C. § 1983**
**Not Generally Applicable**

83.     All preceding paragraphs are incorporated by reference.

84.     The attorney general is selectively enforcing Washington law.  State law vests enforcement power in the state Human Rights Commission, but instead Defendant has arrogated the power to investigate and enforce the WLAD, sidestepping the statutory process.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

85.    The attorney general does not state that any complaint has been received by a person who claims unlawful employment discrimination.

86.    Yet the attorney general has launched an extensive probe into the University.

87.    The University is not aware of any similar probes against other universities in the state, nor against other employers without receipt of an actual complaint.

88.    The attorney general is not acting according to generally applicable policy, but is pursuing this probe based upon the publicly stated stances of the University.

89.    This is not a generally applicable policy, and therefore must face strict scrutiny under the Free Exercise Clause.

90.    The attorney general does not have a compelling interest in the probe.

91.    The probe is not the least restrictive means of pursuing the attorney general's interests.

**Count VI**
**Violation of U.S. Const. Amend. I: Free Exercise Clause**
**42 U.S.C. § 1983**
**Not Generally Applicable**

92.    All preceding paragraphs are incorporated by reference.

93.    The attorney general claims to be applying the WLAD against the University.

94.    The WLAD contains multiple exemptions. It exempts religious non-profit organizations and small employers from its prohibition on employment discrimination, private clubs and fraternal organizations from its prohibition on public accommodations discrimination, and religious crematories and mausoleums from its prohibition on public accommodations discrimination, among other exemptions.

COMPLAINT                          Page 17
CASE NO. 3:22-CV-05540

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

95.     As construed by the attorney general, the WLAD does not contain an exemption for the University's religious exercise of hiring employees who share its faith.

96.     Therefore its application to the University's religious policies and decision making must face strict scrutiny.

97.     The attorney general does not have a compelling interest in the probe, nor in applying the WLAD to the University's religious employment practices.

98.     The probe is not the least restrictive means of pursuing the attorney general's interests.

### Count VII
### Violation of U.S. const. Amend. I: Establishment Clause
### 42 U.S.C. § 1983
### Denominational Preference

99.     All preceding paragraphs are incorporated by reference.

100.    "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

101.    Defendant has treated the University differently due to its religious denominational affiliation.

102.    Defendant has no compelling interest in treating the University differently due to its denominational affiliation.

103.    Defendant has not used the least restrictive means available to achieve his interests.

### Count VIII
### Violation of U.S. Const. Amend. I: Free Exercise Clause
### 42 U.S.C. § 1983
### Not Neutral

104.    All preceding paragraphs are incorporated by reference.

105.    The attorney general is using the powers of his office to pressure the University to change its religious beliefs and practices.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

106.    The attorney general is taking sides in a religious dispute.

107.    The attorney general is selectively enforcing Washington law. State law vests enforcement power in the state Human Rights Commission, but instead Defendant has arrogated the power to investigate and enforce the WLAD, sidestepping the statutory process.

108.    The attorney general does not state that any complaint has been received by a person who has experienced unlawful employment discrimination.

109.    Yet the attorney general has launched a probe into the University.

110.    The University is not aware of any similar probes against other universities in the state, nor against other employers without receipt of an actual complaint.

111.    Defendant's actions are not neutral with regard to religion.

112.    Defendant has treated the University differently with regard to its religious beliefs.

113.    Defendant has treated the University differently due to its religious denomination.

114.    Defendant has exceeded his power under state and federal law in order to punish the University for maintaining religious beliefs that Defendant opposes.

115.    Defendant has no compelling interest in treating the University non-neutrally.

116.    Defendant has not used the least restrictive means available to achieve his interests.

**Count IX**
**Violation of U.S. Const. Amend. I: Free Speech, Free Exercise**
**and Assembly Clauses**
**42 U.S.C. § 1983**
**Right of Assembly**

117.    All preceding paragraphs are incorporated by reference.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

118.    Seattle Pacific University chooses faculty, staff, and leaders who share its faith as part of its religious exercise.

119.    The University is engaged in religious association and assembly with others who share its faith.

120.    The University associates and assembles with the Free Methodist Church as an expression of its faith.

121.    The attorney general's probe infringes on the University's First Amendment right "peaceably to assemble" to engage in otherwise lawful religious exercise and speech activities with persons of their choosing. *See Thomas v. Collins*, 323 U.S. 516, 530-40 (1945).

122.    Absent injunctive and declaratory relief, the University will be irreparably harmed.

### Count X
### Violation of U.S. Const. Amend. I: Free Speech and Free Exercise Clauses
### 42 U.S.C. § 1983
### Right of Expressive Association

123.    All preceding paragraphs are incorporated by reference.

124.    Seattle Pacific University chooses faculty, staff, and leaders who share its faith as part of its expression of its religious beliefs.

125.    Seattle Pacific University associates with the Free Methodist Church as an expression of its religious beliefs.

126.    The attorney general's actions are an attempt to prohibit that expressive association.

127.    The attorney general's actions have a chilling effect on the University's expressive association, by requiring it to make decisions about employment under a cloud of government investigation and impending penalties.

128.    If the University was unable to select employees who share its religious beliefs, the University's expression would be irreparably harmed.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

129. If the University was required to select employees who do not agree with its faith and conduct standards, it would be disaffiliated from the Free Methodist Church.

130. The attorney general's probe infringes on the University's First Amendment right to associate with others for the purpose of expression.

131. Absent injunctive and declaratory relief, the University will be irreparably harmed.

### PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

a. Declare that the First Amendment to the United States Constitution protects the autonomy of Seattle Pacific University to make decisions regarding faith and doctrine free from governmental interference;

b. Declare that the First Amendment to the United States Constitution protects the ability of Seattle Pacific University to make decisions regarding its ministerial employees free from governmental interference;

c. Declare that the First Amendment to the United States Constitution protects the ability of Seattle Pacific University to make employment decisions based on its sincerely held religious beliefs;

d. Declare that the Washington Law Against Discrimination cannot be applied to Seattle Pacific University in a manner that violates the University's rights under the United States Constitution;

e. Issue a preliminary and then permanent injunction prohibiting the attorney general from continuing with the current probe and otherwise interfering in matters of church governance and the University's relationships with ministerial employees;

f. Award Plaintiffs the costs of this action and reasonable attorney's fees; and

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

g.      Award such other and further relief as the Court deems equitable and just.

DATED this July 27, 2022

ELLIS, LI & McKINSTRY PLLC

By:   */s/ Nathaniel L. Taylor*
      Daniel J. Ichinaga, WSBA No. 13522
      Nathaniel L. Taylor, WSBA No. 27174
      Abigail St. Hilaire, WSBA No. 48194
      1700 Seventh Avenue, Suite 1810
      Seattle, WA 98101-1820
      Phone: (206) 682-0565
      Fax: (206) 625-1052
      Email: dichinaga@elmlaw.com
             ntaylor@elmlaw.com
             asthilaire@elmlaw.com

      Lori H. Windham (*pro hac vice* to be filed)
      Daniel Benson (*pro hac vice* to be filed)
      THE BECKET FUND FOR RELIGIOUS
      LIBERTY
      1919 Pennsylvania Ave. NW, Ste 400
      Washington, DC  20006
      Phone: (202) 955-0095
      lwindham@becketlaw.org
      dbenson@becketlaw.org

      *Attorneys for Seattle Pacific University*

COMPLAINT
CASE NO. 3:22-CV-05540                    Page 22

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052