The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| SEATTLE PACIFIC UNIVERSITY, | NO. 3:22-cv-05540-RJB |
| Plaintiff, | DEFENDANT'S MOTION TO DISMISS |
| v. | NOTE ON MOTION CALENDAR: September 9, 2022 |
| ROBERT FERGUSON, in his official capacity as Attorney General of Washington, | ORAL ARGUMENT REQUESTED |
| Defendant. | |

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION..................................................................................................... 1

3    II.    RELEVANT FACTUAL BACKGROUND ............................................................. 2

4    III.    ARGUMENT ......................................................................................................... 5

5    A.    A Preliminary Letter Requesting Basic Information Does Not Give Rise to a
6           Justiciable Controversy Under Article III.................................................. 6

7           1.    The Complaint Makes Plain that SPU Lacks Standing..................... 6

8                 a.    SPU fails to allege injury in fact from the receipt of one letter ................. 7

9                 b.    SPU's injuries cannot be redressed by the instant suit .............................. 8

10          2.    This Case Is Not Ripe for Judicial Review .................................... 10

11   B.    Even if There Is a Justiciable Controversy Ripe for Review—Which There Is
            Not—*Younger* Requires Abstention .......................................................... 13

12          1.    This Is an Ongoing State-Initiated Investigation............................ 14

13          2.    Enforcement of Civil Rights Laws Is an Important State Interest .................. 15

14          3.    SPU May Raise Federal Constitutional Claims in State Proceedings............. 16

15   C.    Plaintiff's Allegations Fail to State a Claim for First Amendment Violations........ 16

16          1.    SPU's First Amendment Rights Have Not Been Targeted, Chilled, or
17                Infringed Upon by Mere Government Inquiry ................................ 17

18          2.    SPU's Own Allegations Do Not Even Claim that Every One of Its
                  Employees Is a Minister.................................................................. 17

19          3.    The WLAD Is Generally Applicable and SPU's Conclusory Allegations
20                of Selective Enforcement Are Insufficient to State a Plausible Claim for
                  Relief ............................................................................................... 18

21          4.    SPU Has Not Alleged a Cognizable Retaliation or Actionable Chill
22                Claim ............................................................................................... 20

23          5.    Even Under Heightened Scrutiny, the AGO's Inquiry Comports with the
                  First Amendment ............................................................................. 21

24   IV.    CONCLUSION ................................................................................................... 22

25

26

# TABLE OF AUTHORITIES

## **Cases**

*Alsager v. Bd. of Osteopathic Med. & Surgery*,
  945 F. Supp. 2d 1190 (W.D. Wash. 2013),
  *aff'd*, 573 F. App'x 619 (9th Cir. 2014) .......................................................... 14, 15

*Amanatullah v. Colo. Bd. of Med. Exam'rs*,
  187 F.3d 1160 (10th Cir. 1999) ........................................................................ 15

*Americopters, LLC v. F.A.A.*,
  441 F.3d 726 (9th Cir. 2006) ............................................................................. 6

*Am-Pro Protective Agency, Inc. v. United States*,
  281 F.3d 1234 (Fed. Cir. 2002) ........................................................................ 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 19, 20

*Ass'n of Irritated Residents v. EPA*,
  10 F.4th 937 (9th Cir. 2021) .......................................................................... 6, 10

*Benningfield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ............................................................................ 20

*Bob Jones Univ. v. United States*,
  461 U.S. 574 (1983)........................................................................................... 9

*Bristol-Myers Squibb Co. v. Connors*,
  979 F.3d 732 (9th Cir. 2020),
  *cert. denied*, 141 S. Ct. 2796 (2021) ........................................................... 13, 14

*Camacho v. Brandon*,
  317 F.3d 153 (2d Cir. 2003) ............................................................................. 20

*Canatella v. California*,
  404 F.3d 1106 (9th Cir. 2005) .......................................................................... 13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)........................................................................................... 18

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
  953 F.3d 655 (9th Cir. 2020) ............................................................................ 14

*City of Seattle v. McKenna*,
  259 P.3d 1087 (Wash. 2011) .............................................................................. 3

*Colwell v. Dep't of Health & Hum. Servs.*,
  558 F.3d 1112 (9th Cir. 2009) .......................................................................... 11

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) .................................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.,*
   528 U.S. 167 (2000) ...................................................................................... 6

*Frizelle v. Slater,*
   111 F.3d 172 (D.C. Cir. 1997) .................................................................... 19

*Fulton v. City of Philadelphia,*
   141 S. Ct. 1868 (2021) ................................................................................ 21

*Hartman v. Moore,*
   547 U.S. 250 (2006) .................................................................................... 21

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
   565 U.S. 171 (2012) ................................................................................. 8, 9

*Hum. Life of Wash. Inc. v. Brumsickle,*
   624 F.3d 990 (9th Cir. 2010) ....................................................................... 7

*Lacey v. Maricopa Cnty.,*
   693 F.3d 896 (9th Cir. 2012) ..................................................................... 21

*Lopez v. Candaele,*
   630 F.3d 775 (9th Cir. 2010) ....................................................................... 7

*M.S. v. Brown,*
   902 F.3d 1076 (9th Cir. 2018) ..................................................................... 8

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
   457 U.S. 423 (1982) ............................................................................. 15, 16

*Morning Hill Foods, LLC v. Hoshijo,*
   259 F. Supp. 3d 1113 (D. Haw. 2017) ...................................................... 15

*Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.,*
   477 U.S. 619 (1986) ................................................................ 6, 12, 15, 17

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
   140 S. Ct. 2049 (2020) ....................................................... 4, 12, 17, 18

*Puri v. Khalsa,*
   844 F.3d 1152 (9th Cir. 2017) ..................................................................... 8

*S. Bay United Pentecostal Church v. Newsom,*
   985 F.3d 1128 (9th Cir. 2021) .............................................................. 21, 22

*Sampson v. Cnty. of Los Angeles,*
   974 F.3d 1012 (9th Cir. 2020) ................................................................... 20

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*,
546 F.3d 1087 (9th Cir. 2008) ........................................................................ 5, 14

*Scott v. Rosenberg*,
702 F.2d 1263 (9th Cir. 1983) ....................................................................... 17, 22

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)......................................................................................... 13, 14

*St. German of Alaska E. Orthodox Catholic Church v. United States*,
840 F.2d 1087 (2d Cir. 1988) ............................................................................. 17

*State v. Arlene's Flowers, Inc.*,
441 P.3d 1203 (Wash. 2019),
*cert. denied*, 141 S. Ct. 2884 (2021) ................................................................... 19

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ......................................................... 10, 11, 12, 18

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).............................................................................................. 6

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ............................................................................ 10

*Tony & Susan Alamo Found. v. Sec. of Labor*,
471 U.S. 290 (1985).............................................................................................. 9

*Trump v. Vance*,
140 S. Ct. 2412 (2020)........................................................................................ 13

*Twitter, Inc. v. Paxton*,
26 F.4th 1119 (9th Cir. 2022) ............................................................... 10, 11, 12

*Twitter, Inc. v. Paxton*,
No. 21-cv-01644-MMC, 2021 WL 1893140 (N.D. Cal. May 11, 2021),
*aff'd*, 26 F.4th 1119 (9th Cir. 2022)................................................................... 20

*United States v. Lee*,
455 U.S. 252 (1982)............................................................................................... 9

*Wash. Ass'n of Realtors v. Wash. State Pub. Disclosure Comm'n*,
No. C09-5030RJB, 2009 WL 10726078 (W.D. Wash. May 19, 2009)........................ 15, 16

*Washington v. Matheson Flight Extenders, Inc.*,
No. C17-1925-JCC, 2021 WL 489090 (W.D. Wash. Feb. 10, 2021)...................... 3

*Woods v. Seattle's Union Gospel Mission*,
481 P.3d 1060 (Wash. 2021),
*cert. denied*, 142 S. Ct. 1094 (2022)............................................................. passim

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Younger v. Harris,*
    401 U.S. 37 (1971) .................................................................................. passim

## **Statutes**

Wash. Rev. Code § 49.60.010 ..................................................................... 3, 15, 19

Wash. Rev. Code § 49.60.040(11) ........................................................................ 3

## **Other Authorities**

*AG Ferguson's Office Confirms Civil Rights Investigation of Seattle Pacific University*,
    Washington State Attorney General's Office (July 29, 2022),
    https://www.atg.wa.gov/news/news-releases/attorney-general-ferguson-confirms-
    civil-rights-investigation-seattle-pacific .......................................................... 5

*Civil Rights Division - Cases*, Washington State Office of the Attorney General,
    https://www.atg.wa.gov/cases (Aug. 18, 2022, 9:00 AM) ..................................... 3

Jeanie Lindsay, *Seattle Pacific University Students Continue Sit-In Over Anti-LGBTQ+
    Policy, Want Trustees to Resign*, Seattle Times (June 3, 2022, 5:59 PM),
    https://www.seattletimes.com/education-lab/seattle-pacific-university-students-
    continue-sit-in-over-anti-lgbtq-policy-want-trustees-to-resign/ .............................. 4

Samantha Chery, *They Protested with Pride Flags at Graduation. Their Fight Isn't
    Over*, Wash. Post (June 23, 2022, 10:00 AM),
    https://www.washingtonpost.com/nation/2022/06/23/seattle-pacific-university-pride-
    flag-protest/ ............................................................................................... 4

U.S. Const. amend. I ............................................................................................. 18

U.S. Const. art. III ................................................................................................. 6

## **Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 5, 6, 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................... passim

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# I.      INTRODUCTION

In May 2022, hundreds of Washingtonians wrote to the Washington Attorney General's Office (AGO), to complain about Seattle Pacific University's (SPU or University) employment practices and to express concern that the University discriminates against faculty and staff on the basis of sexual orientation. As the State's top legal office that works to protect the civil rights of all Washingtonians, including the right to employment free from discrimination because of sexual orientation, the AGO sent a letter to SPU in June 2022. The letter advised that the AGO was opening an inquiry to determine whether the University is meeting its obligations under the Washington Law Against Discrimination (WLAD), and requested four categories of information about the University's employment practices.

Recognizing the important constitutional and statutory rights of nonprofit religious employers to determine who they employ as ministers, the AGO's four requests sought information that would allow it to determine whether the University's employment practices qualified for the "ministerial exception" to anti-discrimination law. The University declined to provide the requested information and instead filed this federal lawsuit, alleging that the AGO's inquiry violates its First Amendment rights.

SPU's claims are not justiciable for two reasons. First, SPU lacks standing. The AGO's letter requesting information from SPU, with no threat of legal action for failing to respond and a clear disclaimer that the AGO had not reached any predetermined conclusion about the legality of SPU's employment practices, does not create a cognizable Article III injury. Nor are SPU's claimed injuries redressable: the University's alleged injuries stem from its disagreement with legal standards set forth by the U.S. Supreme Court and Washington Supreme Court, standards from which this Court has no authority to excuse SPU. Enjoining the AGO's inquiry would not exempt SPU's employment practices from coverage under the WLAD. Because that is the gravamen of the University's requested relief, its claims are not redressable under Article III.

Second, even if the University could demonstrate standing, this case is extraordinarily premature and not ripe for judicial review. SPU's fears of a lawsuit, based solely on one inquiry letter, cannot serve as the basis for review when the AGO is still in the process of determining whether SPU's conduct is lawful. Because resolving SPU's allegations involving the ministerial exception will necessarily require developing the facts, this case is far from fit for review.

Assuming SPU's claims are justiciable—which they are not—then the AGO's inquiry initiated an ongoing civil enforcement action that would require this Court to abstain from exercising jurisdiction pursuant to the *Younger* abstention doctrine. Civil investigations qualify for *Younger* abstention where, as here, the government is investigating to determine whether an enforcement action is appropriate.

Finally, on the merits, SPU's claims fail to state a cognizable First Amendment claim and must be dismissed pursuant to Rule 12(b)(6). The First Amendment does not provide religious organizations with such sweeping immunity that it is unconstitutional for the government simply to ask them for information. Moreover, SPU's conclusory claim that its conduct is protected under the ministerial exception is unsupported by any facts that would allow the AGO or this Court to confirm that it applies. SPU's theory, therefore, runs squarely contrary to U.S. Supreme Court precedent, which requires a fact-bound inquiry to evaluate the ministerial exception. The University's retaliation claim similarly fails to establish that the University was engaged in protected activity or that it was targeted because of its religious beliefs. And, in any event, the AGO's inquiry would survive strict scrutiny because the WLAD is neutral and generally applicable, and the AGO's inquiry is appropriately tailored to serve the compelling government interest in enforcing state anti-discrimination law. This case should be dismissed with prejudice.

## II.     RELEVANT FACTUAL BACKGROUND

In enacting the WLAD, the Washington Legislature declared that "discrimination against any of [the State's] inhabitants because of . . . sexual orientation . . . [is] a matter of state

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

concern," and that such discrimination "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." Wash. Rev. Code § 49.60.010. In light of this compelling state interest and the Attorney General's duty to enforce the law, the AGO routinely investigates allegations of WLAD violations. *See, e.g.*, *City of Seattle v. McKenna*, 259 P.3d 1087, 1092 (Wash. 2011) (confirming Attorney General's "discretionary authority to act in any court, state or federal, trial or appellate, on a matter of public concern") (cleaned up) (citing Wash. Rev. Code § 43.10.030(1)); *see also Washington v. Matheson Flight Extenders, Inc.*, No. C17-1925-JCC, 2021 WL 489090, at *3 (W.D. Wash. Feb. 10, 2021) (confirming "the Attorney General is authorized to enforce [the] WLAD").[1]

    Washington courts regularly interpret the scope and application of the WLAD, including through a 2021 opinion that guided the AGO's inquiry to SPU here. In *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060, 1065–70 (Wash. 2021), *cert. denied*, 142 S. Ct. 1094 (2022), the Washington Supreme Court interpreted a provision that exempts "religious or sectarian organization[s] not organized for private profit" from the definition of covered "employer[s]" who must abide by the WLAD's anti-discrimination rules. *See* Wash. Rev. Code § 49.60.040(11). The court held that, in order to avoid a conflict with a provision of the Washington Constitution that prohibits special treatment for favored entities, the WLAD's religious-employer exemption is limited to employees who are "ministers" as defined by the U.S. Supreme Court's First Amendment jurisprudence. *Woods*, 481 P.3d at 1067. Under that federal standard, determining whether an employee is a "minister" requires a fact-specific look at a "variety of factors," including but not limited to the level of religious training and examination required for the job, any religious commission the employee receives, any requirement to instruct on religious subjects, any duties to pray with others or attend religious

_____

[1] Examples of dozens of civil enforcement actions brought by the AGO under the WLAD are available at: https://www.atg.wa.gov/cases.

1   services as part of the job, and the extent to which the church and the employee hold the

2   employee out to the world as a minister. *Id.* at 1068 (quoting *Our Lady of Guadalupe Sch. v.*

3   *Morrissey-Berru*, 140 S. Ct. 2049, 2063 (2020)).

4         Beginning in May 2022, SPU students and faculty began a sit-in at the University

5   President's office to protest the University's employment policies. ECF No. 1 ¶ 40. The sit-in

6   protested the University's employee code of conduct, which SPU admits requires "all of its

7   regular faculty and its staff" to affirm that they will not be involved in sexual activity with

8   members of the same sex. ECF No. 1 ¶¶ 30–31. The protest was widely covered by local and

9   national media outlets. *See id.*; *see also* Samantha Chery, *They Protested with Pride Flags at*

10  *Graduation. Their Fight Isn't Over*, Wash. Post (June 23, 2022);[2] Jeanie Lindsay, *Seattle Pacific*

11  *University Students Continue Sit-In Over Anti-LGBTQ+ Policy, Want Trustees to Resign*, Seattle

12  Times (June 3, 2022).[3]

13        During and after the sit-in, the Washington State Attorney General's Office received

14  hundreds of contacts from Washingtonians concerned about SPU's employment practices. In

15  keeping with its duty to enforce the non-discrimination provisions of the WLAD, while

16  simultaneously respecting the University's First Amendment rights to religious autonomy in the

17  selection of its ministers, the AGO sent a letter asking the University four questions tailored to

18  the issues that the *Woods* court identified as determinative of the WLAD's application. *See*

19  ECF No. 1-1. The letter made clear that the AGO has "not made any determination as to whether

20  the University has violated any law," explicitly acknowledged the ministerial exception

21  contained in the WLAD through a citation to *Woods*, and did not threaten any legal action if the

22  University did not comply with the information request. *Id.*

23

24
          [2]  Available at: https://www.washingtonpost.com/nation/2022/06/23/seattle-pacific-
25  university-pride-flag-protest/.
          [3]  Available at: https://www.seattletimes.com/education-lab/seattle-pacific-university-
26  students-continue-sit-in-over-anti-lgbtq-policy-want-trustees-to-resign/.

1        The AGO sent the letter privately to a limited group—SPU's General Counsel and four

2   SPU employees. *Id.* The AGO did not publicize or disclose its letter until it received media

3   inquiries following SPU's filing of this lawsuit. *See AG Ferguson's Office Confirms Civil Rights*

4   *Investigation of Seattle Pacific University*, Washington State Office of the Attorney General

5   (July 29, 2022).[4]

6        In response to the AGO's letter, the University provided none of the requested

7   information and instead responded with a letter asking detailed questions regarding the AGO's

8   legal positions and theories. *See* ECF No. 1 ¶ 58. The AGO explained that it would respond after

9   conferring with Attorney General Ferguson. *Id.* Two days later, without any further discussion,

10  SPU filed this action against the Attorney General in federal court, alleging that the AGO's

11  inquiry into SPU's employment practices violates SPU's constitutional rights in ten separate

12  ways. ECF No. 1.

13                         **III.    ARGUMENT**

14       Attorney General Ferguson respectfully moves to dismiss this action under Federal Rules

15  of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal pursuant to Rule 12(b)(1) is warranted

16  because SPU lacks Article III standing, and the preliminary nature of the AGO's inquiry means

17  that this matter is not ripe for judicial review.

18       Even assuming the Court concludes that SPU has standing—which it should not—it

19  necessarily follows that the investigation would be an ongoing state civil enforcement

20  proceeding that would require abstention and a stay pursuant to *Younger. See San Jose Silicon*

21  *Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092

22  (9th Cir. 2008) (government agency's "investigation of Plaintiffs' activities" is an ongoing state

23  proceeding that required federal court abstention.)

24

25  _____

26      [4] Available at: https://www.atg.wa.gov/news/news-releases/attorney-general-ferguson-confirms-civil-rights-investigation-seattle-pacific.

DEFENDANT'S MOTION TO DISMISS      5      ATTORNEY GENERAL OF WASHINGTON
NO. 3:22-CV-05540-RJB                Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

If the Court nevertheless proceeds on the merits, the University's claims should be dismissed pursuant to Rule 12(b)(6). "Even religious schools cannot claim to be wholly free from some state regulation." *See Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986). SPU fails to state any cognizable claim under the First Amendment, and its Complaint should be dismissed.

## A.   A Preliminary Letter Requesting Basic Information Does Not Give Rise to a Justiciable Controversy Under Article III

Federal courts are constitutionally limited under Article III to resolving "cases" and "controversies." U.S. Const. art. III, § 2. The doctrines of standing and ripeness reflect that constitutional requirement. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (noting that standing and ripeness "originate" from the same Article III limitation and their analysis can "boil down to the same question"). When considering a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, this Court "need not assume the truthfulness of the complaint" and may make legal judgments as to the finality of a party's actions and its jurisdiction over the claims. *See Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). SPU's allegations fall short of Article III's requirements, and this case should be dismissed pursuant to Rule 12(b)(1) for lack of standing, insufficient ripeness, or both.

### 1.   The Complaint Makes Plain that SPU Lacks Standing

To establish Article III standing, a plaintiff bears the burden of showing injury in fact, causation, and a likelihood that a favorable decision will redress the alleged injury. *See Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought"). As detailed below, SPU fails to allege facts sufficient to show injury in fact or redressability.

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

         **a.**      **SPU fails to allege injury in fact from the receipt of one letter**

2

       Injuries in fact must be "an invasion of a legally protected interest" which is both

3

(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.

4

*See Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). In cases challenging pre-enforcement

5

action where the plaintiff has not yet been penalized, a "generalized threat of prosecution" does

6

not satisfy Article III's case or controversy requirement. *See Hum. Life of Wash. Inc. v.*

7

*Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010). Rather, there must be a "genuine threat of

8

imminent prosecution." *See id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*,

9

220 F.3d 1134, 1139 (9th Cir. 2000)). Without "an actual and well-founded fear" that an

10

enforcement action will, in fact, occur, the mere unilateral choice to refrain from First

11

Amendment "expressive activity," including expression related to religious beliefs, does not

12

constitute a constitutional injury in fact. *See Human Life of Wash.*, 624 F.3d at 1001 (citation

13

omitted).

14

       SPU has failed to demonstrate an actual and well-founded fear that an enforcement action

15

will occur, given that its lawsuit is based on nothing more than a letter of inquiry that states that

16

the AGO "is opening an inquiry to determine whether the University is meeting its obligations

17

under state law," expressly states that the AGO has "not made any determination as to whether

18

the University has violated any law," and makes no threats of prosecution. ECF No. 1-1. Just as

19

important, the AGO explicitly cited to *Woods*, the controlling case defining the scope of the

20

WLAD's definition of "employer." *Id.* The AGO understands and agrees that SPU is exempt

21

from the WLAD when it hires ministers. The purpose of citing *Woods*—a case that entirely

22

revolved around the question of *when* someone is a minister—was to highlight that the AGO is

23

not attempting to regulate employment decisions involving ministers. Given the AGO's

24

agreement that hiring ministers "is not subject to . . . regulation," the Court should conclude that,

25

despite whatever alleged fear of prosecution or purported chilled expressive association SPU

26

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   claims, SPU "lack[s] standing to bring this claim." *Cal. Pro-Life Council, Inc. v. Getman*,

2   328 F.3d 1088, 1096 (9th Cir. 2003).

3           **b.**     **SPU's injuries cannot be redressed by the instant suit**

4         The University also falls short of even the modest bar of Article III redressability. The

5   redressability prong of standing requires the remedies sought to be "substantially likely to

6   redress" the claimed injury. *M.S. v. Brown*, 902 F.3d 1076, 1084 (9th Cir. 2018). A plaintiff

7   cannot establish redressability if it seeks remedies "which are beyond the district court's

8   remedial power to issue." *Id.* at 1083.

9         SPU seeks two forms of prospective relief: injunctive relief against the Attorney

10   General's inquiry and declaratory relief that it is entitled to First Amendment protections. SPU

11   alleges that its right to govern itself and its relationship with its ministers has been infringed and

12   it has been chilled in its decisions regarding employment. But while "applying any laws to

13   religious institutions necessarily interferes with the unfettered autonomy churches would

14   otherwise enjoy, this sort of generalized and diffuse concern for church autonomy, without more,

15   does not exempt them from the operation of secular laws." *Puri v. Khalsa*, 844 F.3d 1152, 1168

16   (9th Cir. 2017) (quoting *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 948

17   (9th Cir. 1999)).

18         SPU's requested relief will not redress its claimed injuries, because those injuries stem

19   from the University's disagreement with applicable law, not from the AGO's inquiry. The U.S.

20   Supreme Court has made clear that the First Amendment's Religion Clauses do not preclude

21   employment discrimination complaints by *all* employees, but only those "concerning the

22   employment relationship between a religious institution and its ministers." *Hosanna-Tabor*

23   *Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012). The Washington

24   Supreme Court subsequently held that the religious-employer exception under the WLAD has

25   the same contours as the federal ministerial exception. *Woods*, 481 P.3d at 1070.

26

DEFENDANT'S MOTION TO DISMISS      8      ATTORNEY GENERAL OF WASHINGTON
NO. 3:22-CV-05540-RJB                       Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  In recognizing the ministerial exception, the U.S. Supreme Court explicitly held that it is

2  appropriate for the government to assess whether an employee falls within the exception. In

3  *Hosanna-Tabor*, the Court held that the ministerial exception is a defense on the merits, rather

4  than a jurisdictional bar as some Courts of Appeals had held. *Hosanna-Tabor*,

5  565 U.S. at 195 n.4. Trial courts must therefore determine, by assessing facts such as the job

6  description and the employee's duties, whether a discrimination claim may proceed or is barred

7  by the ministerial exception. *Id.*

8  Through this lawsuit, SPU resists the U.S. Supreme Court's fact-specific inquiry and

9  urges an exemption that is broader, and possibly total. But an order enjoining the AGO's

10  investigation would not change the law or immunize SPU from suit going forward. In the face

11  of a future government inquiry, or a private lawsuit brought by a disappointed job applicant, the

12  University will need to explain the vital religious duties SPU faculty and staff perform—

13  precisely the information the AGO asked for. The only relief that would prevent SPU from being

14  chilled by the contours of the ministerial exception would be to change the ministerial

15  exception—relief this Court is without power to grant in this case.

16  For similar reasons, SPU's requested declaratory relief would do nothing to address its

17  alleged injuries. There is no question that the First Amendment provides protections to the

18  University in its hiring decisions regarding ministers. However, this protection is not limitless,

19  and it does not offend the First Amendment for religious entities to be bound by generally

20  applicable laws even if those laws go against strongly held religious beliefs and have some effect

21  on church autonomy. *See, e.g.*, *Tony & Susan Alamo Found. v. Sec. of Labor*, 471 U.S. 290,

22  305–06 (1985) (imposing minimum wage laws and recordkeeping requirements); *Bob Jones*

23  *Univ. v. United States*, 461 U.S. 574, 604–05 (1983) (denying nonprofit tax status of religious

24  entities that discriminate because of race); *United States v. Lee*, 455 U.S. 252, 261 (1982)

25  (holding that religious employers may constitutionally be required to pay social security taxes

26  for their employees). SPU must follow the law as it is, including the limits of the ministerial

exception. Because none of the requested relief would redress the harms that SPU alleges, its Complaint should be dismissed.

### 2.     This Case Is Not Ripe for Judicial Review

The ripeness doctrine also makes clear that judicial review is premature. The role of federal courts is not "to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies." *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). To that end, ripeness reflects (1) the Article III limitations on judicial power and (2) the prudential reasons for refusing to exercise jurisdiction. *See id.* The constitutional component "is synonymous with the injury-in-fact prong of the standing inquiry." *See Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) (quoting *Getman*, 328 F.3d at 1094 n.2). As detailed above, SPU falls short of that requirement.

The prudential component of ripeness also requires dismissal of this case. Prudential ripeness evaluates "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *See id.* (quoting *Ass'n of Irritated Residents*, 10 F.4th at 944); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 751 (9th Cir. 2020). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). Factors relevant to fitness include whether the challenged government action is "a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (explaining that "the core question" for ripeness is "whether the agency has completed its decisionmaking process"); *Stormans*, 586 F.3d at 1126 (same).

With respect to the hardship requirement, the plaintiff must show that withholding jurisdiction would lead to "direct and immediate hardship" that will require "an immediate and

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  significant change in the plaintiff['s] conduct of their affairs with serious penalties attached to

2  noncompliance." *Stormans*, 586 F.3d at 1126 (quotation omitted). Courts also "consider[] the

3  hardship to the government from moving forward" with review. *See Twitter*, 26 F.4th at 1123.

4  Consequently, even if there is some hardship to the plaintiff in holding that there is no

5  jurisdiction, that hardship may not outweigh the judiciary and government's interest in delaying

6  review. *See id.*; *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009)

7  (holding that the plaintiff's hardship does not overcome the "uncertainty of the legal issue

8  presented in the case in its current posture").

9      The Ninth Circuit's recent decision in *Twitter v. Paxton* is instructive. There, the Court

10  of Appeals affirmed dismissal of Twitter's lawsuit alleging retaliation by the Texas Attorney

11  General and seeking to enjoin him from investigating Twitter, including through a civil

12  investigative demand for documents that, according to Twitter, were protected under the First

13  Amendment's Free Press Clause. 26 F.4th at 1121–22, 1126.

14      In affirming the lower court's determination that the case was not ripe, the Court

15  explained that Twitter's suit was not solely legal and required more factual development. It

16  reasoned that allowing Twitter's suit to go forward "will force [the Attorney General] to litigate

17  its entire case on deceptive trade practices without even being able to investigate it and figure

18  out if it wants to pursue it or not." *Id.* at 1124. Twitter's lawsuit put the cart before the horse

19  where the Attorney General "hasn't even alleged that there is a violation" and "is just trying to

20  look into it." *Id.* ("Finding this case ripe would require federal courts in California to determine

21  the constitutionality of Texas's unfair trade practices law in a hypothetical situation, before

22  Texas has even decided whether its law applies."). And, because Twitter's claim of retaliation

23  first required a determination of whether it was engaged in constitutionally protected activity,

24  the court would be required to assess whether Twitter's statements were unprotected

25  misrepresentations, an issue that "depends on further factual amplification." *Id.* at 1125 (citing

26  *United States v. Lazarenko*, 476 F.3d 642, 652 (9th Cir. 2007)).

Turning to the balance of hardships, the Court held that any hardship Twitter would face due to the alleged First Amendment chill did not outweigh the Attorney General's hardship in being forced to litigate the case without first having the opportunity to investigate. *Twitter*, 26 F.4th at 1126 (noting that allowing the case to move forward would "undermine Texas's state sovereignty" because "States can investigate" violations of state law, and "[f]inding this case ripe would make some of those investigations impossible").

SPU's claims are similarly unfit for judicial review. Religious institutions are not categorically immune from state laws, including the WLAD. *See Ohio C.R. Comm'n*, 477 U.S. at 628; *Our Lady of Guadalupe*, 140 S. Ct. at 2062–63; *Woods*, 481 P.3d at 1069. Thus, while SPU's employment practices with respect to ministers are clearly protected under the First Amendment, its employment practices with respect to non-ministers—which is what the AGO's inquiry focused on—are different. The facts are going to matter, and the AGO made it explicitly clear that it made no legal conclusions about the legality of SPU's employment practices. SPU does not allege that all of its employees are ministers. Indeed, SPU's Complaint is conspicuously silent as to whether it employs non-ministerial employees who are nonetheless subject to the policy restricting their employment on the basis of sexual orientation. This case is unfit for review because of the "further factual development" that remains. *Stormans*, 586 F.3d at 1126.

Nor does delaying litigation present a particular hardship to SPU. The AGO made no threats to enforce the request for information and has not taken any action that "requires immediate compliance." *Twitter*, 26 F.4th at 1125. The University has not and does not need to comply with the request for information, and any First Amendment arguments that the University wishes to make may be raised if the AGO determines to bring a WLAD claim.

Finally, the policy concerns identified by the Ninth Circuit in *Twitter* countenance against allowing SPU's suit to move forward. It would require the AGO to litigate the entire case before it has even determined whether it wants to bring an action or not. Indeed, whether SPU has been chilled turns on whether SPU's employment policies go beyond established First Amendment

protections. But at this point, it is impossible for this Court to determine whether SPU has engaged in protected constitutional activity, and SPU refused to respond to the AGO's request for information that would answer that question.

Under controlling Circuit precedent, this case falls short of both the constitutional and prudential ripeness requirements. It should be dismissed pursuant to Rule 12(b)(1).

## B. Even if There Is a Justiciable Controversy Ripe for Review—Which There Is Not—*Younger* Requires Abstention

Under *Younger v. Harris* and its progeny, federal courts that otherwise would have jurisdiction must abstain from hearing federal claims for relief in (1) ongoing criminal prosecutions, (2) certain "civil enforcement proceedings," or (3) pending civil proceedings relating to the state court's ability to perform its judicial functions. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). "Although *Younger* neither provides a basis for nor destroys federal jurisdiction, *Younger* does determine when the federal courts must refrain from exercising jurisdiction." *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005). This reflects interests in comity and federalism, ensuring that federal courts do not interfere with ongoing state proceedings. *See Younger*, 401 U.S. at 39, 43–45; *see also Trump v. Vance*, 140 S. Ct. 2412, 2421 (2020) (noting the doctrine's "core justification" was to prevent friction between states and the federal government).

Whether *Younger* abstention is required depends on whether the proceeding "falls within the general class of quasi-criminal enforcement actions," not the facts of a particular case or matter. *See Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 737 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2796 (2021) (abstaining out of deference to ongoing state civil matter alleging unfair or deceptive business practices). Thus in *Bristol-Myers Squibb*, the Ninth Circuit rejected a plaintiff's argument that the court must probe into "the State's true motive in bringing the case." *Id.* As the Court explained, "[a] federal-court inquiry into why a state attorney general chose to pursue a particular case, or into the thoroughness of the State's pre-filing investigation, would

13

be entirely at odds with *Younger*'s purpose of leaving state governments 'free to perform their separate functions in their separate ways.'" *Id.* at 737–38 (quoting *Younger*, 401 U.S. at 44).

The abstention requirement applies even when the federal claim implicates First Amendment rights. "*Younger* abstention routinely applies even when important rights are at stake." *See Bristol-Myers Squibb*, 979 F.3d at 738. In *Younger* itself, the Court held that abstention was appropriate even if the state prosecution had an alleged "chilling effect" on First Amendment speech rights, as "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *See id.* (quoting *Younger*, 401 U.S. at 51). As the *Younger* Court observed, while the alleged First Amendment chill could be cured "by an injunction that would prohibit any prosecution," that would lead to the States being "stripped of all power to prosecute even the socially dangerous and constitutionally unprotected conduct." 401 U.S. at 51.

Under this well-established law, even if SPU's claims are justiciable, each of the three elements of the *Younger* standard is met and this Court should abstain from reviewing.

### 1.    This Is an Ongoing State-Initiated Investigation

*Younger* applies to ongoing civil enforcement actions that are "quasi-criminal" in nature. *See Sprint Commc'ns*, 571 U.S. at 79. "[C]ivil enforcement proceedings initiated by the state 'to sanction the federal plaintiff . . . for some wrongful act,' *including investigations* 'often culminating in the filing of a formal complaint or charges,' meet this requirement." *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020) (emphasis added) (quoting *Sprint Commc'ns*, 571 U.S. at 79–80) (holding that a nuisance abatement proceeding, along with its preceding investigation, qualified for *Younger* abstention).

For purposes of the first *Younger* requirement, then, state enforcement action begins with investigation into the federal plaintiff's conduct. *See San Jose*, 546 F.3d at 1092 ("The state-initiated proceeding in this case—the Elections Commission's investigation of Plaintiffs' activities—is ongoing."); *Alsager v. Bd. of Osteopathic Med. & Surgery*, 945 F. Supp. 2d 1190,

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB                                    14                    ATTORNEY GENERAL OF WASHINGTON
                                                                                        Civil Rights Division
                                                                                     800 Fifth Avenue, Suite 2000
                                                                                       Seattle, WA  98104
                                                                                         (206) 464-7744

1195 (W.D. Wash. 2013), *aff'd*, 573 F. App'x 619 (9th Cir. 2014) ("The Board's investigation of Plaintiff's conduct constitutes a state initiated 'ongoing proceeding' for the purposes of *Younger* abstention."); *see also Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163–64 (10th Cir. 1999) (holding that the state proceedings began the day a letter advised plaintiff of an investigation, not when a formal lawsuit was filed). Indeed, as this very Court has explained, if an investigation can qualify as Article III injury in fact and chill plaintiff's speech, then it follows *a fortiori* that there is an ongoing state proceeding for the purposes of *Younger*. *See Wash. Ass'n of Realtors v. Wash. State Pub. Disclosure Comm'n*, No. C09-5030RJB, 2009 WL 10726078, at *6 (W.D. Wash. May 19, 2009) (concluding that, if the entity subject to government investigation "has an injury, it would be inconsistent to find that there were no state proceedings"). SPU cannot have it both ways—if it is injured for purposes of standing then there is an ongoing state proceeding for purposes of *Younger*.

### 2. Enforcement of Civil Rights Laws Is an Important State Interest

"Proceedings necessary for the vindication of important state policies . . . also evidence the state's substantial interest in the litigation." *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). There can be no question that state investigations under civil rights laws "implicate an important state interest." *See, e.g.*, *Ohio C.R. Comm'n*, 477 U.S. at 628 ("[T]he elimination of prohibited sex discrimination is a sufficiently important state interest."); *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1122 (D. Haw. 2017) (same).

The ongoing proceedings implicate the important state interest of investigating and remedying potential WLAD violations. The WLAD itself expressly makes clear that the state is concerned with instances of discrimination against Washingtonians. *See* Wash. Rev. Code § 49.60.010 ("The legislature hereby finds and declares that practices of discrimination against any of its inhabitants . . . are a matter of state concern" that affect "the public welfare,

health, and peace of the people of this state"). The second element of *Younger* abstention is satisfied.

### 3.    SPU May Raise Federal Constitutional Claims in State Proceedings

Finally, if the AGO's investigation leads to service of compulsory process or to litigation, SPU has adequate opportunities to raise its federal constitutional claims at that point. But allowing the present lawsuit to proceed would offend *Younger*'s core purpose of protecting comity between the states and the federal government. *See Middlesex Cnty Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.").

An exercise of federal jurisdiction in this case "would invite the kind of 'race to the courthouse' which would be repugnant to the principles announced in *Younger*." *Wash. Ass'n of Realtors*, 2009 WL 10726078, at \*7. All of the *Younger* elements are met here, and this Court should abstain from adjudicating the University's claims.

### C.    Plaintiff's Allegations Fail to State a Claim for First Amendment Violations

SPU admits that its lifestyle policy prohibiting same-sex marriage or sexual conduct extends to "all of its regular faculty and its staff." ECF No. 1 ¶ 31. The University is conspicuously silent as to whether it believes all of those individuals are ministers. And while the First Amendment clearly protects the University's employment practices with respect to its ministers, those protections do not extend to discrimination against any the University's non-ministerial employees, to whom the WLAD's prohibition of employment discrimination on the basis of sexual orientation would apply. Consequently, even assuming Article III confers this Court jurisdiction and it does not abstain pursuant to *Younger*, the First Amendment's Religion Clauses are not offended by the government simply requesting information from a religious institution so that it may determine whether its employment practices comport with generally applicable state law. SPU's claims should be dismissed pursuant to Rule 12(b)(6).

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

**1.    SPU's First Amendment Rights Have Not Been Targeted, Chilled, or Infringed Upon by Mere Government Inquiry**

SPU's core contention is that the First Amendment sweeps so broadly that it prohibits government entities from even speaking to religious entities about potentially unlawful activity. But "[e]ven religious schools cannot claim to be wholly free from some state regulation." *Ohio C.R. Comm'n*, 477 U.S. at 628. For instance, the U.S. Supreme Court rejected a religious school's First Amendment claim against the Ohio Civil Rights Commission, holding that "the Commission violates no constitutional rights by merely investigating the circumstances of [an employee's discharge.]" *Id.* Courts across the country have affirmed the government's ability to speak with and investigate religious entities about potentially unlawful conduct, oftentimes using methods that are more intrusive than a simple letter asking for information. *See, e.g.*, *St. German of Alaska E. Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1092 (2d Cir. 1988) (rejecting church's Free Exercise and Free Association claims and upholding government's third-party recordkeeper summonses for church-related documents); *Scott v. Rosenberg*, 702 F.2d 1263, 1272–75 (9th Cir. 1983) (holding that the FCC may investigate a church-owned broadcasting station in response to allegations of fraudulent activity).

The AGO's limited involvement with the University by sending an inquiry letter does not constitute excessive government entanglement with religious institutions and does not provide a colorable basis for its alleged First Amendment violations. SPU's second and third causes of action should be dismissed.

**2.    SPU's Own Allegations Do Not Even Claim that Every One of Its Employees Is a Minister**

SPU also claims that the AGO's inquiry interferes with its relationship with its ministerial employees. The First Amendment protects a religious institution's independence with respect to "matters of church government as well as those of faith and doctrine." *Our Lady of Guadalupe*, 140 S. Ct. at 2055. Recognizing this, courts across the country, and recently the U.S. Supreme

Court, have applied the ministerial exception to employment-law claims from individuals "holding *certain important* positions with churches and other religious institutions." *Our Lady of Guadalupe*, 140 S. Ct. at 2060 (emphasis added); *Woods*, 481 P.3d at 1071 (Yu, J., concurring) (clarifying that the ministerial exception is "limited and narrow" and does not grant "a carte blanche license to discriminate against members of the LGBTQ+ community who are employed by religious institutions").

Here, the Complaint's conclusory statement that the AGO's inquiry interferes with SPU's ministers does not meet the Rule 12(b)(6) pleading standards because it fails to allege that all of its employees are ministers who fall under that standard. SPU's fourth cause of action under the ministerial exception should be dismissed.

### 3. The WLAD Is Generally Applicable and SPU's Conclusory Allegations of Selective Enforcement Are Insufficient to State a Plausible Claim for Relief

A law that is neutral and generally applicable is not subject to strict scrutiny, "even if the law has the incidental effect of burdening a particular religious practice." *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Stormans*, 586 F.3d at 1131 ("The Free Exercise Clause is not violated even though a group motivated by religious reasons may be more likely to engage in the proscribed conduct."). In contrast, "if the *object* of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Lukumi Babalu Aye*, 508 U.S. at 533 (citing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878–79 (1990)).

SPU's focus on the AGO's inquiry is misplaced. The focus of the "generally applicable and neutral" inquiry should instead be on the WLAD. The purpose of the neutral and generally applicable assessment is to determine what level of scrutiny a law, not a government actor, must undergo in order to adhere to the Free Exercise Clause's guarantee that government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

18

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Looking to the WLAD, the Washington Supreme Court has already held that "[t]he WLAD is a neutral, generally applicable law subject to rational basis review." *See State v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1231 (Wash. 2019), *cert. denied*, 141 S. Ct. 2884 (2021). Therefore, to prevail on a Rule 12(b)(6) motion, the AGO must only show that the provision prohibiting sexual orientation discrimination is plausibly related to Washington's stated objective—eliminating discrimination in employment. *See* Wash. Rev. Code § 49.60.010. There can be no serious dispute that the WLAD meets this standard.

Turning to the allegations regarding the AGO's motives, they are plainly insufficient to state a claim for selective prosecution. The entirety of SPU's allegations on this point consist of three paragraphs alleging, "[u]pon information and belief," that the AGO's inquiry has the improper purpose to "influenc[e] the University in its application and understanding of church teaching," and "to regulate and surveil a religious school's relationships with all its employees and leaders." ECF No. 1 ¶¶ 49–50, 59. Such "bald allegations" are "conclusory and not entitled to be presumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Nothing about the facts of the AGO's inquiry indicate anything improper: a staff attorney in the Civil Rights Division signed the inquiry letter, which should surprise no one because the letter was about civil rights. ECF No. 1-1 at 4. And SPU makes no allegation that the AGO did not investigate universities, secular or of other denominations, that employed similar employment practices or triggered comparable levels of constituent complaints. The most SPU offers is a reference to *State v. Arlene's Flowers*, a discrimination case filed nearly a decade ago that had nothing to do with religious employment. *See* ECF No. 1 ¶ 59.

Such brief and conclusory allegations cannot "overcome the strong presumption that government officials . . . carry out their duties lawfully and in good faith." *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1238 (Fed. Cir. 2002); *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (noting a "strong but rebuttable presumption" that "public officers" "discharge their duties correctly, lawfully, and in good faith"). In short, the WLAD is

neutral and generally applicable, and SPU's Complaint does not contain "any factual allegation sufficient to plausibly suggest [a] discriminatory state of mind" by AGO officials. *Iqbal*, 556 U.S. at 683. The Court should dismiss SPU's fifth, sixth, seventh, and eighth causes of action.

### 4. SPU Has Not Alleged a Cognizable Retaliation or Actionable Chill Claim

To state a First Amendment retaliation claim, SPU must sufficiently allege that (1) it engaged in a constitutionally protected activity, (2) the AGO's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the AGO's conduct. *See Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020).

Not all actions having some chilling effect on constitutionally protected activity are actionable. *See Camacho v. Brandon*, 317 F.3d 153, 163 n.11 (2d Cir. 2003) (citing *Pierce v. Tex. Dep't of Crim. Just., Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994)). Indeed, the Fifth Circuit has explicitly held that an investigation allegedly in retaliation to protected First Amendment speech would not constitute adverse action. *See Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (addressing a First Amendment retaliation claim in employment). Likewise, in rejecting Twitter's claim that its First Amendment protected activities were chilled by the Texas Attorney General's investigation, the Northern District of California explained that the potential consequences of ignoring the Attorney General's investigative subpoena were not severe. *See Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140, at *4 (N.D. Cal. May 11, 2021), *aff'd*, 26 F.4th 1119 (9th Cir. 2022). Similarly here, the potential consequences of not cooperating with the AGO's inquiry letter are limited. The letter is not a form of compulsory process, and a mere investigation does not constitute an actionable chill to support a retaliation or expressive association claim.

Finally, the University's Complaint fails to allege how its hiring of ministerial employees was a substantial factor in the AGO's inquiry. SPU must allege facts proving "'the elements of

DEFENDANT'S MOTION TO DISMISS
NO. 3:22-CV-05540-RJB

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). As the U.S. Supreme Court made clear in a First Amendment retaliatory prosecution claim, the plaintiff must allege "the absence of probable cause" to overcome the "longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Hartman*, 547 U.S. at 263. As the Complaint admits, the AGO received numerous complaints from Washingtonians regarding SPU's employment policies, ECF No. 1 ¶¶ 40–41, which may apply to "regular faculty and staff" exclusive of ministers, ECF No. 1 ¶ 31. SPU offers no allegation why its decision to hire ministers, rather than its concessions about its employment policies and the flood of complaints the AGO received, motivated the AGO's inquiry letter. Accordingly, the University's first and tenth claims should be dismissed.

### 5. Even Under Heightened Scrutiny, the AGO's Inquiry Comports with the First Amendment

Even assuming that the AGO's inquiry is subject to heightened scrutiny in any of the analyses above, it is satisfied in this scenario. Conduct that is narrowly tailored to serve a compelling state interest satisfies strict scrutiny. *See S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1142 (9th Cir. 2021). There is no question that the enforcement of state civil rights laws serves a compelling interest. *See, e.g.*, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) ("We do not doubt that this interest [in equal treatment of gay foster parents and foster children] is a weighty one, for '[o]ur society has come to the recognition that gay persons and gay couples cannot be treated as social outcasts or as inferior in dignity and worth.'") (quoting *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018)); *Bob Jones Univ.*, 461 U.S. at 604 ("The Government has a fundamental, overriding interest in eradicating racial discrimination in education.").

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Narrow tailoring requires the government to employ the "least restrictive means" to advance its interest. Regulations that treat religious and non-religious conduct the same across activities and sectors can satisfy strict scrutiny. *See S. Bay United Pentecostal Church*, 985 F.3d at 1143–44, 1148 (holding that California's restrictions on indoor church services during the COVID-19 pandemic satisfied strict scrutiny). Courts can consider a variety of factors when determining whether a government investigation is necessary to further a compelling interest in light of competing First Amendment concerns. *See, e.g.*, *Scott v. Rosenberg*, 702 F.2d 1263, 1275–76 (9th Cir. 1983) (considering the breadth of the investigation and the reliability of the information regarding potential unlawful conduct).

The AGO's conduct here was narrowly tailored to determining whether a large employer's practices comported with the WLAD. The AGO understood, based on public reporting and hundreds of inquiries, that "the University may utilize employment policies and practices that permit or require discrimination on the basis of sexual orientation." ECF No. 1-1 at 1. In response, the AGO privately requested four categories of information relating to SPU's employment practices. *Id.* This tailored inquiry meant that the AGO could advance the State's interest in eliminating unlawful discrimination while simultaneously limiting any potential burden on SPU's First Amendment rights.

The WLAD's prohibition on employment discrimination survives strict scrutiny, and SPU's second, third, fifth, sixth, seventh, eighth, ninth, and tenth claims fail to state a legally cognizable claim under the First Amendment. They should be dismissed.

## IV.   CONCLUSION

Based on the foregoing reasons, Defendant respectfully requests that this action be dismissed.

//

//

//

22

1    DATED this 18th day of August, 2022.

2                                    Respectfully submitted,

3                                    ROBERT W. FERGUSON
                                     Attorney General of Washington
4

5                                    _____

6                                    DANIEL J. JEON, WSBA No. 58087
                                     Assistant Attorney General
7                                    Wing Luke Civil Rights Division
                                     Office of the Attorney General
8                                    800 Fifth Avenue, Suite 2000
                                     Seattle, WA 98104
9                                    (206) 342-6437
                                     daniel.jeon@atg.wa.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6          DATED this 18th day of August, 2022.

7

8                                                              _____

9                                                              KEELY TAFOYA
                                                               Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26