The Honorable Robert J. Bryan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

SEATTLE PACIFIC UNIVERSITY,

                Plaintiff,

    v.

ROBERT FERGUSON, in his official
capacity as Attorney General of
Washington,

                Defendant.

NO. 3:22-cv-05540-RJB

DEFENDANT'S REPLY IN
SUPPORT OF ITS MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

NOTE ON MOTION CALENDAR:
October 14, 2022

ORAL ARGUMENT:
October 26, 2022 at 9:30 a.m.

1

**TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 1

       A.   The AGO's Preliminary Letter Requesting Basic Information Does Not Give
            Rise to a Justiciable Controversy................................................................. 1

            1.   SPU Fails to Establish Standing........................................................ 1

                 a.   With no credible threat of enforcement, there is no injury in fact............. 1

                 b.   SPU's Harms Are Not Redressable ................................ 2

            2.   This Extraordinarily Early Investigation Is Not Ripe for Review ................... 3

       B.   Abstention Is Appropriate In This Case ................................................. 5

       C.   SPU Fails to State First Amendment Violations ..................................... 6

            1.   A Letter Asking for Information About *Who* Is a Minister Cannot Serve
                 as the Basis for a Wholesale Claim Under the Ministerial Exception ............. 6

            2.   SPU's Retaliation Claims Do Not Establish Chill or Retaliatory Motive.......... 6

            3.   The WLAD Allows Discrimination Claims Based on the Rights of Non-
                 Ministers................................................................................ 9

            4.   The WLAD Is a Generally Applicable and Neutral Law................................ 11

III.   CONCLUSION .................................................................................... 12

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton,*
  521 U.S. 203 (1997) ..................................................................................... 10

*Alsager v. Bd. of Osteopathic Med. & Surgery,*
  945 F. Supp. 2d 1190 (W.D. Wash. 2013),
  *aff'd,* 573 F. App'x 619 (9th Cir. 2014) ......................................................... 6

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
  824 F.3d 858 (9th Cir. 2016) .......................................................................... 8

*Arizona v. Yellen,*
  34 F.4th 841 (9th Cir. 2022) ........................................................................... 2

*Bantam Books v. Sullivan,*
  372 U.S. 58 (1963) .......................................................................................... 7

*Billard v. Charlotte Cath. High Sch.,*
  2021 WL 4037431 (W.D.N.C., Sept. 3, 2021) ............................................... 9

*Bollard v. Cal. Province of the Soc'y of Jesus,*
  196 F.3d 940 (9th Cir. 1999) ..................................................................... 3, 10

*Citizens for Free Speech, LLC v. Cnty. of Alameda,*
  953 F.3d 655 (9th Cir. 2020) .......................................................................... 5

*City of Seattle v. McKenna,*
  259 P.3d 1087 (Wash. 2011) ........................................................................... 5

*Duquesne Univ. of the Holy Spirit v. N.L.R.B.,*
  947 F.3d 824 (D.C. Cir. 2020) ...................................................................... 10

*EEOC v. Fremont Christian Sch.,*
  781 F.2d 1362 (9th Cir. 1986) ..................................................................... 4, 9

*Fulton v. City of Philadelphia,*
  141 S. Ct. 1868 (2021) .................................................................................. 11

*Herx v. Diocese of Ft. Wayne-S. Bend Inc.,*
  48 F. Supp. 3d 1168 (N.D. Ind. 2014) ........................................................... 9

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012) .............................................................................. 3, 10, 11

*Koala v. Khosla,*
  931 F.3d 887 (9th Cir. 2019) ....................................................................... 7, 8

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*N.L.R.B. v. Cath. Bishop*,
 440 U.S. 490 (1979)................................................................................................ 10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
 140 S. Ct. 2049 (2020)........................................................................................... 11

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
 772 F.2d 1164 (4th Cir. 1985)................................................................................. 9

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
 754 F.3d 754 (9th Cir. 2014)................................................................................... 5

*Sampson v. Cnty. of Los Angeles*,
 974 F.3d 1012 (9th Cir. 2020)................................................................................. 6

*Stormans, Inc. v. Wiesman*,
 794 F.3d 1064 (9th Cir. 2015)............................................................................... 11

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014)............................................................................................ 1, 2

*Tandon v. Newsom*,
 141 S. Ct. 1294 (2021)........................................................................................... 11

*Thomas v. Anchorage Equal Rts. Comm'n*,
 220 F.3d 1134 (9th Cir. 2000)......................................................................... 2, 3, 4

*Tingley v. Ferguson*,
 47 F.4th 1055 (9th Cir. 2022).......................................................................... 2, 12

*Twitter, Inc. v. Paxton*,
 No. 21-cv-01644-MMC, 2021 WL 1893140 (N.D. Cal. May 11, 2021),
 *aff'd*, 26 F.4th 1119 (9th Cir. 2022).................................................................... 8

*Twitter, Inc. v. Paxton*,
 26 F.4th 1119 (9th Cir. 2022)............................................................................ 3, 4

*Vigars v. Valley Christian Ctr. of Dublin, Cal.*,
 805 F. Supp. 802 (N.D. Cal. 1992)................................................................... 4, 9

*Washington v. Matheson Flight Extenders, Inc.*,
 No. C17-1925-JCC, 2021 WL 489090 (W.D. Wash. Feb. 10, 2021)...................... 5

*Williams-Yulee v. Florida Bar*,
 575 U.S. 433 (2015)............................................................................................. 12

## Statutes

Wash. Rev. Code § 43.10.030(1)....................................................................... 5, 6

Wash. Rev. Code § 49.60.040(11)......................................................................... 11

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

## **Other Authorities**

2

U.S. Const. amend. I ................................................................................................................ 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1
2

# I.    INTRODUCTION

3      At no point has the Attorney General's Office attempted to "investigate *all* of a religious

4  university's employment decisions," "troll through the beliefs of the University," or make

5  independent "determinations about which employees are sufficiently religious." ECF No. 21 at

6  24. That much is plain from the AGO's targeted letter requesting information. *See* ECF No. 16-1

7  at 3. Rather, the AGO's letter privately informed the University that it had opened an inquiry to

8  learn more about the University's employment practices citing the leading Washington case

9  regarding the scope of the conduct in question. *Id.*

10      In filing this lawsuit, SPU attempts to capitalize on a single letter that threatened no legal

11  action in order to seek expansive exemptions for religious employers from the Washington Law

12  Against Discrimination. But that broad goal cannot be achieved through the vehicle of the

13  AGO's single letter. This Court should dismiss SPU's Amended Complaint with prejudice.

# II.    ARGUMENT

14

**A.    The AGO's Preliminary Letter Requesting Basic Information Does Not Give Rise
15        to a Justiciable Controversy**

16

**1.    SPU Fails to Establish Standing**

17

18      SPU does not show injury in fact or redressability, and therefore lacks standing. *See*

19  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citing *Lujan v. Defenders of*

20  *Wildlife*, 504 U.S. 55, 560–61 (1992)).

21                **a.    With no credible threat of enforcement, there is no injury in fact**

22      SPU is unable to escape the fact that the AGO's preliminary letter of inquiry simply states

23  that the AGO "is opening an inquiry to determine whether the University is meeting its

24  obligations under state law," expressly states that the AGO has "not made any determination as

25  to whether the University has violated any law," and makes no threat of prosecution.

26  ECF No. 16-1. Grasping at straws to justify its pre-enforcement suit, it argues that it has shown

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB                                1                        ATTORNEY GENERAL OF WASHINGTON
                                                                                        Civil Rights Division
                                                                                    800 Fifth Avenue, Suite 2000
                                                                                       Seattle, WA  98104
                                                                                          (206) 464-7744

sufficient injury because it has "engage[d] in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." ECF No. 21 at 15 (citing *Driehaus*, 573 U.S. at 160). However, where, as here, "the prospect of future enforcement" is merely "speculative" on Plaintiff's part, *Driehaus*, 573 U.S. at 165, *there is no credible threat of prosecution. See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000); *see also Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (relying on *Thomas* in assessing whether there is a credible threat of enforcement). And while the government's "failure to disavow enforcement of the law" may "weigh in favor of standing," ECF No. 21 at 15 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022), and *Driehaus*, 573 U.S. at 165), here, there have been insufficient facts to determine whether the WLAD applies at all, such that there is not any prospect of "enforcement of the law" to "disavow." *Id.* SPU filed suit so prematurely that the AGO has not received the information necessary to understand its employment practices, or to make any determination whether they were lawful. That makes this case different from *Driehaus*, *Tingley*, *Italian Colors Restaurant*, and *Lakeview Financial*. *Cf.* ECF No. 21 at 15. And requesting that SPU retain records during its inquiry, ECF 16-1 at 4–5, as the AGO routinely does in order to ensure that information relevant to its inquiry is preserved is simply a best practice with a common-sense rationale. It is in no way a foregone conclusion of litigation. SPU's subjective chill based on a speculative fear of enforcement does not confer standing.

### b.     SPU's Harms Are Not Redressable

SPU's Opposition confirms that the relief it seeks is to change the state of binding WLAD and First Amendment law. ECF 21 at 2 (citing the *dissenting* opinion of two U.S. Supreme Court Justices for SPU's view of what the law ought to be). Because this Court cannot provide that relief, its claims are not redressable.

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

2.       **This Extraordinarily Early Investigation Is Not Ripe for Review**

Because SPU fails to establish injury in fact or redressability for purposes of standing, its claim should likewise be dismissed for lack of ripeness. SPU's attempts to distinguish *Twitter v. Paxton* are unavailing. Whether SPU's employment practices comport with Washington law or are protected under the First Amendment "requires more factual development" and "developing those facts is the very subject" of the AGO's inquiry. *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1128 (9th Cir. 2022).

Over similar allegations that the Texas Attorney General's inquiry itself violates the plaintiff's First Amendment rights, the Ninth Circuit held that the case was not yet ripe for review. *Id.* at 1122, 1129. Whether SPU alleges more than just a First Amendment retaliation claim or not, further factual development is required to assess whether its employment decisions comport with Washington law. *Id.*; *see also Thomas*, 220 F.3d at 1141 ("A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate." (quoting *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996))). Indeed, SPU's First Amendment claims will necessarily turn on the facts of how it treats its employees, including the categorization of those employees as ministers or non-ministers. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012). That further factual development is critical, and wholly lacking, at this stage.

The University attempts to salvage ripeness in its Opposition by stating, for the first time to the AGO, that it also requires its non-ministerial employees to adhere to its hiring standards. *See* ECF No. 21 at 14. And while employment decisions about non-ministerial employees may nevertheless be protected under the First Amendment, that is not a purely legal question as SPU claims. *See, e.g.*, *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 947 (9th Cir. 1999) ("In the case of lay employees, the particularly strong religious interests surrounding a church's choice of its representative are missing, and we have concluded that applying Title VII is

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

constitutionally permissible."); *Vigars v. Valley Christian Ctr. of Dublin, Cal.*, 805 F. Supp. 802, 808 (N.D. Cal. 1992). For instance, in *Vigars*, the Northern District of California rejected a religious entity's motion for summary judgment because there was dispute as to whether the plaintiff librarian was terminated for religious reasons—adultery—or secular ones—her pregnancy. *Id.* at 805. The same is true here. Without further factual development, it is unclear whether SPU's adverse employment actions (to the extent there are any) are based on religious reasons or instead constitute discrimination based on sexual orientation. *See, e.g.*, *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986) ("While . . . religious institutions may base relevant hiring decisions upon religious preference, religious employers are not immune from liability [under Title VII] for discrimination based on . . . sex . . . .") (cleaned up). Even though SPU brought more claims than the plaintiff in *Twitter*, the legal reasoning and necessary result is the same—SPU's claims require fact development and are unripe for judicial review.

Finally, SPU entirely ignores the *Twitter* court's discussion of the importance of state sovereignty and the need for states to be able to look into possible violations of their state laws. 26 F.4th at 1126. That concern is particularly acute here, where litigation would force the AGO to defend a hypothetical unconstitutional application of the statute that it may not even apply, simply because it sent a letter requesting information from the University. Contrary to SPU's Opposition, any future enforcement action is entirely hypothetical. *See* ECF No. 21 at 17. At this stage, SPU has provided *no* information about whether or how its lifestyle standards have led it to take adverse action against employees or prospective employees—ministerial or otherwise. *See, e.g.*, *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases.").

This case is not ripe and not fit for review. It should be dismissed.

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

**B.      Abstention Is Appropriate In This Case**

2

For the reasons discussed above, Plaintiff's complaint should be dismissed both on

3

standing and ripeness grounds. But even if the Court were to find that there is a justiciable

4

controversy ripe for review, this Court should abstain from hearing Plaintiff's claims under

5

*Younger v. Harris* and its progeny.

6

There is no dispute that *Younger* abstention applies to certain civil enforcement

7

proceedings that are "akin to criminal proceedings." *ReadyLink Healthcare, Inc. v. State Comp.*

8

*Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). SPU maintains that "[a] state official's employment

9

investigation, without more, is not a quasi-criminal enforcement action under *Younger*."

10

ECF No. 21 at 21. But SPU fails to cite any case in which the Ninth Circuit has held that a state's

11

investigation of an employer's practices is insufficient to require *Younger* abstention.

12

By contrast, as noted in the AGO's Motion to Dismiss, the Ninth Circuit in *Citizens for*

13

*Free Speech, LLC v. Cnty. of Alameda*, specifically stated that "civil enforcement proceedings

14

initiated by the state 'to sanction the federal plaintiff . . . for some wrongful act,' *including*

15

*investigations* 'often culminating in the filing of a formal complaint or charges,'" meet the

16

"quasi-criminal enforcement" requirement for *Younger* abstention. 953 F.3d 655, 657

17

(9th Cir. 2020) (emphasis added) (quoting *Spring Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79

18

(2013)). The University entirely ignores this statement from *Citizens for Free Speech*, which

19

plainly recognizes that certain investigations initiated by the State may require abstention under

20

*Younger*.

21

Here, there is no question that the Attorney General has the authority to enforce the

22

Washington Law Against Discrimination (WLAD). *See, e.g.*, *Washington v. Matheson Flight*

23

*Extenders*, No. C17-1925-JCC, 2021 WL 489090, at *3 (W.D. Wash. Feb. 10, 2021) (holding

24

that "the Attorney General is authorized to enforce the WLAD"); *City of Seattle v. McKenna*,

25

259 P.3d 1087, 1092 (Wash. 2011) (confirming the Attorney General's "discretionary authority

26

to act in any court, state or federal, trial or appellate, on a matter of public concern"); Wash. Rev.

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

5

Code § 43.10.030(1) (authorizing the Attorney General to represent Washington "in all cases in which the state is interested"). Having received hundreds of complaints from Washington citizens about SPU's employment practices, the AGO appropriately initiated a limited inquiry consistent with its authority to enforce the WLAD. This investigation satisfies the requirement of "a state-initiated 'ongoing proceeding' for the purposes of *Younger* abstention." *Alsager v. Bd. of Osteopathic Med. & Surgery*, 945 F. Supp. 2d 1190, 1195 (W.D. Wash. 2013), aff'd, 573 F. App'x 619 (9th Cir. 2014).[1]

## C.   SPU Fails to State First Amendment Violations

### 1.   A Letter Asking for Information About *Who* Is a Minister Cannot Serve as the Basis for a Wholesale Claim Under the Ministerial Exception

Both SPU's Amended Complaint and Opposition to the Motion to Dismiss fail to save SPU's fourth cause of action regarding the ministerial exception. SPU repeatedly highlights the fact that the AGO "has done nothing to limit the probe." ECF No. 21 at 26, *see also* ECF No. 16 ¶ 76. But the letter itself shows that it was limited from the start. The AGO's letter made clear it was trying to determine which positions are ministerial and which are not. *See* ECF No. 16-1 at 2 (citing *Woods*). There is nothing to "limit" until these categories of employees have been sorted out.[2]

SPU's fourth cause of action, alleging that a letter requesting information about non-ministers serves as the basis for interference with its ministers, should be dismissed.

### 2.   SPU's Retaliation Claims Do Not Establish Chill or Retaliatory Motive

SPU fails to allege the required elements of a First Amendment retaliation claim. *See Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020). SPU must plausibly

---

[1] Although SPU asserts that *Younger* "cannot apply to a state investigation that has not yet culminated in judicial proceedings or formal charges," ECF No. 21 at 22, SPU cites exclusively to out-of-circuit cases that pre-date *Citizens for Free Speech*, the Ninth Circuit case which holding controls here.

[2] Even assuming that the AGO had some duty to further limit its request, the parties' communications make clear that the AGO and SPU were still in discussions about the request at the time this lawsuit was filed. *See* ECF No. 16-3. SPU brought this instant lawsuit less than two days after SPU requested further limitations on the inquiry and the AGO indicated it would "respond in due course." *See* ECF No. 1; ECF No. 16-3.

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    allege that it (1) engaged in a constitutionally protected activity, (2) the AGO's actions would

2    chill a person of ordinary firmness from engaging in the protected activity, and (3) the protected

3    activity was a substantial or motivating factor in the AGO's conduct. *See id.* The Ninth Circuit

4    in *Sampson* explained that the plaintiff must show that the "retaliatory animus" was the "'but-

5    for' causation" of the plaintiff's injury—that "the adverse action against [them] would not have

6    occurred absent the retaliatory motive." *Id.*; *see also Koala v. Khosla*, 931 F.3d 887, 905

7    (9th Cir. 2019) (making clear that "motive [is] a necessary element" of a retaliation claim

8    (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 866 (9th Cir. 2016))).

9         SPU's reliance on *Bantam Books v. Sullivan*, 372 U.S. 58 (1963), to establish chill is

10   inapposite. In that case, the Supreme Court of the United States reviewed a Rhode Island law

11   that created a commission whose duty was to "educate the public" about obscene books, pictures,

12   and papers that were inappropriate for minors. *Id.* at 59. In practice, that commission identified

13   media sources that were "objectionable for sale, distribution or display to youths under 18 years

14   of age," and provided official notices to distributors that such materials were "objectionable for

15   sale, distribution or display to youths." *Id.* at 61. The commission's notices further reminded

16   recipients that it was the commission's duty to recommend "prosecution of purveyors of

17   obscenity" and informed recipients that local police departments had a list of the "objectionable"

18   publications, and each notice was "invariably followed up by police visitations." *Id.* at 62, 69.

19   The commission in *Bantam* itself believed that it was "proscribing" conduct, and not simply

20   giving legal advice or making a request. *Id.* at 69 n.9. Thus while ignoring a notice from the

21   commission would violate no law, the context of the notice, and the involvement of law

22   enforcement officials confirming the distributor's conduct, made clear that compliance with the

23   notice was required. *Id.* at 68.

24        None of the factors relied on by the *Bantam* court exist in this case. The AGO clearly

25   stated that it had "not made any determination" as to whether the University has violated any

26   law, did not threaten prosecution, and did not otherwise suggest that the University must comply

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB                                7                ATTORNEY GENERAL OF WASHINGTON
                                                                              Civil Rights Division
                                                                           800 Fifth Avenue, Suite 2000
                                                                              Seattle, WA  98104
                                                                                (206) 464-7744

1   with the request for information. *See* ECF No. 16-1. The AGO's limited letter *requesting*

2   information is a far cry from the threats and criminal sanctions attached to defying a notice in

3   *Bantam*. SPU cannot assert chill where there would not have been any consequences to SPU

4   ignoring the request for information. *See Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021

5   WL 1893140, at *4 (N.D. Cal. May 11, 2021), *aff'd*, 26 F.4th 1119 (9th Cir. 2022) (no chill

6   where "the Office of the Attorney General has no authority to impose any sanction for a failure

7   to comply with its investigation").

8       Nor has SPU sufficiently alleged a retaliatory motive, the necessary third element of its

9   First Amendment retaliation claim. *See Koala*, 931 F.3d at 905; *Ariz. Students' Ass'n*,

10   824 F.3d at 870 ("At the pleading stage, a plaintiff adequately asserts First Amendment

11   retaliation if the complaint alleges plausible circumstances *connecting the defendant's*

12   *retaliatory intent to the suppressive conduct*." (emphasis added)). The AGO's request here

13   followed its receipt of hundreds of constituent complaints. For purposes of measuring motive, it

14   is those complaints, not the adoption by SPU of its employment policies, that stand in "close

15   temporal proximity" to the AGO's letter. *See id.*

16       SPU's retaliation allegation regarding the AGO's press release is similarly deficient. It

17   fails to identify how reaching out to members of the public for information about their

18   experiences would chill SPU from engaging in protected activity, citing only a case from the

19   United States District Court of New Jersey regarding unlawful activity under the National Labor

20   Relations Act without any mention of retaliation or the First Amendment. *See* ECF 21 at 24

21   (citing *Moore-Duncan ex rel. N.L.R.B. v. Aldworth Co., Inc.*, 124 F. Supp. 2d 268, 282

22   (D.N.J. 2000) (holding that allowing an unfair labor practice to continue "would chill further

23   union activity")). Nothing about the AGO sharing its contact information with the public—

24   facilitating others to exercise their First Amendment right to "petition the Government for a

25   redress of grievances," U.S. const. amend. I—chills a reasonable person from exercising their

26   right under the First Amendment's Petition clause. SPU still fails to explain why the AGO's

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   statement was motivated to retaliate against SPU for filing a lawsuit, as opposed to its obvious

2   purpose—to seek information relevant to its inquiry. As the Amended Complaint makes clear,

3   the release simply confirmed that the AGO was investigating SPU, in response to media inquiries

4   following given the University's public legal filing. *See* ECF No. 16-4 at 2.

5       Consequently, SPU's first, tenth, and eleventh claims requiring a demonstration of chill

6   should be dismissed.

7       **3.      The WLAD Allows Discrimination Claims Based on the Rights of Non-**

8       **Ministers**

9       SPU claims that once it states that an employment decision was made pursuant to

10  sincerely held religious beliefs, there can be no further factual development and that, as a legal

11  matter, that employment claim must fail. *See* ECF No. 21 at 17. But, "[l]ike any other person or

12  organization . . . [a church's] employment decisions may be subject to [antidiscrimination law]

13  scrutiny, where the decision does not involve the church's spiritual functions." *See Rayburn v.*

14  *Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). Indeed, the Ninth

15  Circuit has been clear in allowing non-ministerial employees to bring discrimination claims if it

16  is unclear whether an adverse action stemmed from a sincerely held religious belief or something

17  else. *See, e.g.*, *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1364 (9th Cir. 1986) (holding

18  religious school liable for policy of only providing health insurance to men and single women,

19  because religious belief allegedly justifying the policy had been "abandoned"); *Vigars*, 805 F.

20  Supp. at 808 (finding fact issue whether plaintiff was fired for religious reasons or "because of

21  her pregnant condition"); *see also Herx v. Diocese of Ft. Wayne-S. Bend Inc.*, 48 F. Supp. 3d

22  1168, 1182–83 (N.D. Ind. 2014) (holding that a jury may assess whether termination was based

23  on employer's religious rationale or based on sex and disability); *Billard v. Charlotte Cath. High*

24  *Sch.*, 2021 WL 4037431 at *22 (W.D.N.C., Sept. 3, 2021). SPU cites no case, either in this

25  Circuit or elsewhere, that requires such a conclusory application of the First Amendment that is

26  devoid of facts about the reason behind any adverse employment action. Indeed, the law from

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    the Supreme Court on down *requires* a fact-specific analysis. *See Hosanna-Tabor*, 565 U.S. at

2    192–93.

3        SPU's cited cases make clear that the AGO's letter raises no concerns of ongoing

4    government entanglement. In *National Labor Relations Board v. Catholic Bishop*, 440 U.S. 490

5    (1979), the U.S. Supreme Court held that Congress did not clearly grant jurisdiction to the NLRB

6    over teachers in church-operated schools, and consequently declined to read the NLRB's

7    jurisdiction in such a way that  would require the Court to rule on constitutional issues. *Id.* at

8    507. It explained that if the NLRB were to continue to oversee private religious institutions, it

9    would, among others things, "open the door to conflicts between clergy-administrators and the

10   Board." Here, because the First Amendment and WLAD only permit employment discrimination

11   claims regarding non-ministers, there is no similar risk of such conflict.

12       SPU also draws attention to *Duquesne University of the Holy Spirit v. National Labor

13   Relations Board*, 947 F.3d 824 (D.C. Cir. 2020), another case involving the scope of the NLRB's

14   jurisdiction. But that case centered on whether, under D.C. Circuit precedent, the National Labor

15   Relations Act grants the NLRB jurisdiction over certain nonprofits. *Id.* at 833. And under circuit

16   precedent, the court held that the NLRB does not have jurisdiction over nonprofit schools that

17   hold themselves out as a religious institution and are religiously affiliated. *Id.* The assessment of

18   the NLRB's jurisdiction is entirely distinct from an analysis under the Washington Law Against

19   Discrimination.

20       At bottom, and as the Ninth Circuit explained, the "gravest concern under the

21   Establishment Clause" stems from "protected government surveillance of church activities."

22   *Bollard*, 196 F.3d at 949; *see also Agostini v. Felton*, 521 U.S. 203, 222 (1997) ("[P]ervasive

23   monitoring by public authorities in the sectarian schools infringes precisely those Establishment

24   Clause values at the root of the prohibition of excessive entanglement."). But the AGO's letter

25   requesting information poses no such threat. It was sent not according to some regular process

26   of oversight, but issued one time in response to hundreds of complaints. Nor was there any

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

compulsory requirement that the University respond and work with the AGO, as would be the case if the National Labor Relations Act allowed unionization. The "pervasive monitoring" that existed in *Catholic Bishop* and *Agostini* do not exist in this case.

With no continuous oversight foreseen as a result of the AGO's letter, SPU's second, third, fourth, and tenth causes of action should be dismissed.

### 4.     The WLAD Is a Generally Applicable and Neutral Law

The WLAD is a neutral and generally applicable law that need only survive rational basis review, and SPU's arguments otherwise are unavailing. "A law is not generally applicable if it, 'in a selective manner, imposes burdens only on conduct motivated by religious belief.'" *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (quoting *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543 (1993)). But there is no religious employment activity that is covered by the WLAD, but where a "*comparable* secular activity" is exempt. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis added). While SPU is correct that the WLAD does not cover small employers, that is true regardless of whether the employer is religious or secular—the treatment is exactly the same. *See* Wash. Rev. Code § 49.60.040(11). Neither *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021), relating to a law that allowed for individualized exceptions to coverage, nor *Tandon*, 141 S. Ct. at 1296, exempting secular activities but not comparable religious activities, applies to the WLAD's even-handed scheme.

SPU contends that the WLAD is not neutral because its failure to *entirely exempt* religious organizations is the same as *targeting* religious institutions. ECF No. 21 at 30-31. That argument is inconsistent with Supreme Court precedent construing the Americans with Disabilities Act and Title VII, which, like the WLAD, applies a *limited* exemption for religious employers. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020); *Hosanna-Tabor*, 565 U.S. at 188; *see also Lukumi Babalu Aye*, 508 U.S. at 557 (Scalia, J.,

DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
NO. 3:22-CV-05540-RJB

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1 concurring in part) (explaining that laws are not neutral if "by their terms[, they] impose

2 disabilities on the basis of religion"); *Tingley*, 47 F.4th at 1084.

3     Even under the lens of strict scrutiny, the WLAD (and the AGO inquiry letter) survive.

4 The First Amendment requires laws to be "narrowly tailored, not that it be 'perfectly tailored.'"

5 *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 454 (2015) (citing *Burson v. Freemon*,

6 504 U.S. 191, 209 (1992)). "The First Amendment does not confine a State to addressing evils

7 in their most acute form." *Id.* The AGO's letter seeking information specifically related to the

8 analysis prescribed by the U.S. Supreme Court and the Washington Supreme Court is precisely

9 the narrow tailoring that the law requires.

10     The University's second, third, fifth, sixth, seventh, eighth, ninth, and tenth claims fail

11 to state a claim and should be dismissed.

12        **III.   CONCLUSION**

13     Based on the foregoing reasons, Defendant respectfully requests that this action be

14 dismissed with prejudice.

15     DATED this 14th day of October, 2022.

16         Respectfully submitted,

17         ROBERT W. FERGUSON
18         Attorney General of Washington

19

20         DANIEL J. JEON, WSBA No. 58087
21         Assistant Attorney General
         Wing Luke Civil Rights Division
22         Office of the Attorney General
         800 Fifth Avenue, Suite 2000
23         Seattle, WA 98104
         (206) 342-6437
24         daniel.jeon@atg.wa.gov

25

26

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6        DATED this 14th day of October, 2022.

7

8   _____

9   KEELY TAFOYA
    Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26