The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE PACIFIC UNIVERSITY,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS W. BROWN,[1] in his official capacity as Attorney General of Washington,<br><br>    Defendant. | NO. 22-cv-5540-BJR<br><br>**ORDER DISMISSING CASE FOR LACK OF JURISDICTION** |

## I.   INTRODUCTION

Plaintiff, Seattle Pacific University, brought this case against then Attorney General of Washington, Robert Ferguson, in July 2022, alleging First Amendment violations arising from the Attorney General's investigation under the Washington Law Against Discrimination ("WLAD") into the University's employment policies and history. Compl. ECF No. 1. The Court[2] dismissed the lawsuit based on lack of redressability and *Younger*[3] abstention. *See* Dismissal Order, ECF No.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Nicholas W. Brown "automatically substitute[s]" for former Attorney General Robert Ferguson as Defendant in this matter.

[2] The Honorable Robert J. Bryan presiding. This case was reassigned to the undersigned Judge on September 23, 2024. *See* ECF No. 58.

[3] In *Younger*, the Supreme Court declared a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971).

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 1

29. The Court did not address prudential ripeness. Ninth Cir. Order 25, ECF No. 41. The Ninth Circuit Court of Appeals affirmed in part, and reversed in part, remanding this case back to the district court to consider prudential ripeness. *Id.* at 26-27.[4] On remand, the parties agreed to modify the case: Plaintiff amended the complaint; Defendant withdrew the motion to dismiss on the grounds of prudential ripeness; and the case proceeded into discovery. Now pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 73, 79. Having reviewed the motion materials,[5] the record of the case, and the relevant legal authorities, the Court will dismiss this case for lack of jurisdiction. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Seattle Pacific University "holds to traditional Christian beliefs regarding marriage and sexuality" and "expects its faculty, staff and leadership to agree with the University's statement of faith . . . including by living according to the University's religious teachings on marriage." Am. Compl. ¶¶ 3-4, ECF No. 16. The University requires all of its regular faculty and staff to affirm that they will abide by certain lifestyle expectations, which includes a prohibition against sexual intimacy outside of marriage between a man and a woman. *Id.* ¶ 31.

After receiving complaints about possible discriminatory employment policies and practices, the Washington State Attorney General's Office ("AGO") opened an inquiry into the University, including whether it permitted or required discrimination on the basis of sexual orientation, which may violate the Washington Law Against Discrimination ("WLAD").[6] Am.

---

[4] Also available at *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024).
[5] Including Defendant's motion for summary judgment, ECF No.73; Plaintiff's response in opposition and cross-motion for summary judgment, ECF No. 79; Defendant's reply, ECF No. 82, and Plaintiff's reply, ECF No. 83; together with attached exhibits.
[6] The WLAD declares a "right to be free from discrimination because of . . . sexual orientation." Wash. Rev. Code § 49.60.030.

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 2

Compl. Ex. 1, ECF No. 16-1. The letter from the AGO to the University's counsel sought four years of documents and information related to the University's hiring and employment policies, employee complaints, and employee job descriptions. *Id.* The letter made clear that the AGO had "not made any determination as to whether the University has violated any law" and threatened no consequences for noncompliance, although it asked for certification that records would be retained. *Id.* The University responded with a letter seeking clarification on the scope of the probe and requesting the AGO's legal positions and theories. Am. Compl. ¶ 13. Believing the probe unconstitutional, the University initiated this lawsuit, seeking to enjoin the investigation and any future enforcement of the WLAD. *Id.* ¶ 65.

The University asserted eleven causes of action against the AGO, *inter alia* alleging that its investigation violates the First Amendment. Am. Compl. ¶¶ 79-178. Specifically, the University characterized the AGO's actions as retaliation for constitutionally protected activities, an interference with church autonomy, selective enforcement of Washington law, and a denominational preference. *Id.* Counts II, VI, VII, IX, and X are prospective pre-enforcement claims that challenged the impending enforcement of the WLAD; Counts I, III, IV, V, and VIII, and XI are retrospective claims that challenged the Attorney General's investigation to date. *Id.*

The AGO moved to dismiss the University's complaint, and the District Court granted dismissal, finding that the injury was not redressable and *Younger* abstention required dismissal. *See* Ninth Cir. Order 4, 7. The Ninth Circuit panel affirmed the dismissal of the retrospective claims, holding that the University failed to allege a cognizable injury in fact. *Id.* at 8, 26-27. But the panel concluded that the University had alleged an imminent injury sufficient to establish Article III standing for the pre-enforcement claims, the injury is redressable through declaratory relief, and *Younger* abstention is not warranted. *Id.* at 12, 16, 22, 25-27. Additionally, the Ninth Circuit

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 3

determined that the District Court had not ruled on the issue of prudential ripeness and remanded this case for the Court to consider the issue in the first instance. *Id.* at 25-27.

Upon remand, this Court ordered the parties to propose a briefing schedule on the issue of prudential ripeness. ECF No. 44. The parties conferred and filed a stipulation in which the AGO withdrew the motion to dismiss on the grounds of prudential ripeness; Counts I, II, IV, V, VIII, and XI (the retrospective claims) were stricken from Plaintiff's First Amended Complaint; and a date was set for an Answer. Stip. ¶ 7, ECF No. 49. Thereafter, the Court set a scheduling order for discovery and trial. ECF No. 60. After completing discovery, the parties filed cross-motions for summary judgment, which are now ripe for decision. Def's MSJ, ECF No. 73; Pl's MSJ, ECF No. 79.

### III.  LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also Fair Housing Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (noting the court's responsibility to determine whether disputed issues of material fact are present). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

### IV. DISCUSSION

The AGO contends that the records produced in discovery make it clear that the University "has not suffered, and will not imminently suffer, any injury at all." Def's MSJ 1. Further, the AGO disclaims any intent to enforce the challenged statute against the University because the records produced show a lack of any operative employment policy violative of Washington law. *Id.* Accordingly, the AGO asserts that the University's pre-enforcement claims are not ripe, and the Court has no jurisdiction under Article III. *Id.* According to the AGO, evidence has revealed no violations by the University, which means it is in no danger of a lawsuit being brought against it by the AGO, thus removing any threat of injury and resulting in no imminent case or controversy.

The University argues that this case is not moot simply because the AGO has disavowed enforcement, the Court has jurisdiction, and the University's religious employment practices are protected by the First Amendment's freedom of speech, exercise, and assembly clauses. Pl's MSJ 1-2. The Court will begin, as it must, by addressing the threshold inquiry into whether this Court has jurisdiction.

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 5

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, *and actual or imminent*; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (emphasis added) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Importantly, "[t]o qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Meland v. WEBER*, 2 F.4th 838, 848 (9th Cir. 2021) (quoting *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). The doctrines of ripeness and mootness both consider "whether a plaintiff meets this standing requirement at all points during the litigation; indeed, both have been referred to as 'standing on a timeline.'" *Id.* at 848 (citations omitted)).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At summary judgment, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to establish standing. *Id.* (quoting Fed. R. Civ. P. 56(e)); *see also Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("'[A]t the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element' of Article III standing." (quoting *Center for Biological Diversity v. Export-Import Bank*, 894 F.3d 1005, 1012 (9th Cir. 2018))).

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 6

Confusingly, rather than presenting evidence to satisfy its burden on summary judgment, the University argues that the Ninth Circuit already held that the University has standing. *See* Pl.'s MSJ 9-13; Pl.'s Reply 1-2. The University then argues that it is the AGO's burden to prove that the case is moot, while the AGO argues that the University must prove the case is ripe. *Id.*; *see* Def.'s MSJ 9-10; Def.'s Reply 2-3. To clarify, these three doctrines of justiciability, all rooted in the requirement for an injury in fact to establish a live case or controversy, differ temporally: standing is a threshold requirement focused on whether the plaintiff suffered an injury at the time the lawsuit is filed; mootness is focused on intervening events to determine whether a live controversy still exists (i.e., is there still an injury?); ripeness may also consider intervening events to determine whether the alleged injury depends on uncertain future events that may not happen at all (i.e., the injury hasn't yet materialized). *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."); *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) ("The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" (citations omitted)).

Standing is evaluated based on the facts at the time of filing. *Lujan*, 504 U.S. at 569 n.4. But courts may consider later developments to decide if a case that was not ripe has ripened into a concrete controversy, curing prematurity, or if the case that was ripe has become moot, i.e., maturity has been extinguished. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000); *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975).

The injury from a threatened lawsuit, as the University has alleged, is considered a pre-enforcement injury. "Pre-enforcement injury is a special subset of injury-in-fact." *Peace Ranch,*

ORDER DISMISSING CASE FOR LACK OF JURISDICTION
- 7

*LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). The Ninth Circuit explained the framework for analyzing a plaintiff's claims asserting pre-enforcement standing, which "hinges on whether a party has 'alleged a sufficiently imminent injury for the purposes of Article III.'" *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 151 (2014)).

> In *Driehaus*, the Supreme Court offered up three benchmarks to determine whether there is "a credible threat of enforcement": (1) a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) a plaintiff's intended future conduct must be "arguably . . . proscribed by [the] statute" it wishes to challenge, and (3) the threat of future enforcement must be "substantial."

*Id.* (quoting 573 U.S. at 161–62, 164); *see also Peace Ranch*, 93 F.4th at 487 (summarizing the evolution of Ninth Circuit caselaw on pre-enforcement standing). The Ninth Circuit's analysis was based on the University's allegations in its complaint, but this Court's analysis will be in the context of the evidence put forth on summary judgment. Because it is dispositive, the Court begins with a discussion of the third factor—the threat of future enforcement must be *substantial*.

Sorting out whether the threat of future enforcement is substantial involves considering whether an injury is "real and concrete rather than speculative and hypothetical." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138-39 (9th Cir. 2000). Regardless how it is described, this Court's jurisdiction depends on whether the University faces "'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Id.* at 1139 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). To evaluate whether there is a substantial threat of prosecution, courts consider: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 8

or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (quoting *Thomas*, 220 F.3d at 1139); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022).[7]

### A. Concrete plan to violate the law

At the dismissal stage, the Ninth Circuit determined that the University had sufficiently alleged "'an intention to engage in a course of conduct' that intersects with the claimed First Amendment interest." *Seattle Pac. Univ.*, 104 F.4th at 60 (quoting the first *Driehaus* factor). When a plaintiff can demonstrate that it has violated the law in the past, it is not necessary to detail the "when, to whom, where, or under what circumstances" the plaintiff plans to violate the law. *Id.* at 59. The AGO contends that the University has offered no admissible evidence of specific facts to demonstrate that it had violated the law in the past or intends to engage in a course of conduct that would violate the WLAD's employment provisions. Def.'s MSJ 11-14. The University does not address this argument in its motion and response, but in its reply brief, the University states that "specific facts" were recited in its motion. *See* Pl.'s MSJ 9-13; Pl.'s Reply 1 (citing Pl.'s MSJ 9-13, which does not include any supporting facts or evidence).

The University later discusses evidence that it contends supports its allegation that its lifestyle expectations policy[8] is applied to every applicant for full-time, non-student positions, and applicants are asked to confirm that they will comply with those expectations. Pl.'s Reply 2 (citing Pl.'s MSJ 5-8). The evidence is largely contained in the Osborne Declaration, ECF No. 80, which

---

[7] The Court notes that, in essence, it must consider whether plaintiff's *modus operandi* has, or likely will, involve violating the law, as well as whether there is a past history of enforcement of the law under these circumstances.

[8] The Employee Lifestyle Expectations describes behaviors that University employees are expected to refrain from, including "[s]exual behavior that is inconsistent with the University's understanding of Biblical standards, including cohabitation, extramarital sexual activity, and same-sex sexual activity." Porterfield Decl. Ex. D, ECF No. 81-4; *see also* Jeon Decl. Ex. 1, ECF No. 74-1.

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 9

includes exhibits describing its hiring process, standard application form, excerpts from the Faculty Employment Handbook (2024-25) and Employee Handbook (Rev. 9/1/2017), and depositions of the University employees involved in the hiring process. The University asserts that it "has declined to hire non-ministerial employees cohabiting with opposite-sex partners . . . , and it has even been sued under the WLAD for applying its lifestyle expectations." Pl.'s Reply 2; *see* Osborne Decl. Exs. A, B, L; Porterfield Decl, ECF No. 81, at ¶¶ 15, 34,[9] Ex. E.

The referenced evidence, crossing timelines from 2017 to 2025, does not entirely support the University's contentions. For example, the human resources manager who conducts most "Mission Fit" hiring interviews does not recall a single incident where adverse action was taken against a non-ministerial employee because of their sexual orientation, nor in her research did she find any complaints about sexual orientation discrimination.[10] Osborne Decl. Ex. A, Tindall Dep. 208:4-21; 207:24-208:3; *see also* Jeon Decl. Ex. 3, Tindall Dep. 169:8-12; 171:12-14, ECF No. 74-3. She also testified that there was no mechanism for the University to determine whether employees are in compliance with their lifestyle policy. *Id.* at 82:13-15. The University's designated representative testified that there are no processes to validate compliance other than responding to a complaint, and she was not aware of any complaints. Osborne Decl. Ex. B, Brown Depo. 59:17-61:24. She also testified that if a candidate disclosed their sexual orientation in the hiring process,

---

[9] Dr. Porterfield, president of the University since 2023, states that the University was "sued by a former adjunct professor and applicant for a permanent position over its employment policies. That lawsuit was settled." Porterfield Decl. ¶¶ 2, 34. The Court notes that the described lawsuit does not represent enforcement by the AGO under the WLAD.

[10] This is consistent with the University's response to interrogatories, in which it responded that it was "not aware of any complaints since March 4, 2021 in the which the complainant personally 'alleg[ed] that they were not hired or promoted, or were disciplined or terminated, because of their sexual orientation, status of being in a same-sex marriage and/or intimate relationship, or status as being in an intimate relationship with a person to whom the employee was not married." Jeon Decl. Ex. 7, at 7-9, ECF No. 74-7. The University also responded, limited to events on or after March 4, 2021, "No responsive employment actions based upon same-sex marriages, same-sex intimate relationships, or opposite-sex relationships were identified." *Id.* at 6-7.

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 10

the applicant would be asked if they could abide by the lifestyle expectations, and "whether they say that they are gay or not, they would move forward in the hiring process." Osborne Decl. Ex. B, Brown Depo. 215:3-12.

As the AGO points out, the University implements its "policy" inconsistently, it has not changed how it conducts its interviews as a result of the WLAD, hiring managers cannot identify any instance where they took adverse action against gay applicants, and the University does not identify a single incident where adverse action was taken against a non-ministerial employee because of their sexual orientation or sexual conduct. Def.'s MSJ 13-14 (citing exhibits). In sum, the University fails to provide convincing evidence to support its statement that it has violated the law or has a concrete plan to violate the law, and the University's reliance on the sufficiency of its allegations is inadequate at this stage. *Thomas*, 220 F.3d at 1139; *Lujan*, 504 U.S. at 561.

### B. Specific warning or threat to initiate proceedings

The second prong of the inquiry into the credibility of the threat of enforcement is whether the authorities in charge of enforcing the challenged law "have communicated a specific warning or threat to initiate proceedings." *Thomas*, 220 F.3d at 1139. When considering whether a plaintiff faces a realistic threat, a court considers a variety of factors. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). "It is well settled that evidence of past instances of enforcement is important . . . [although] not sufficient to gain standing." *Id.* The Government's failure to disavow application of the challenged provision is a factor in favor of finding standing since it lends weight to a plaintiff's fear of enforcement. *Id.* Additionally, "in the context of pre-enforcement challenges to laws on First Amendment grounds, a plaintiff need only demonstrate that a threat of potential enforcement will cause him to self-censor.'" *Tingley*, 47 F.4th at 1068 (citation omitted). When

ORDER DISMISSING CASE FOR LACK OF JURISDICTION
- 11

First Amendment rights are implicated, the requirements for standing and ripeness are applied less stringently. *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025), *cert. denied sub nom. Project Veritas v. Vasquez*, No. 24-1061, 2025 WL 2823711 (U.S. Oct. 6, 2025).

Before this lawsuit was filed, the AGO had sent a letter to the University's counsel stating that it had "recently learned about possible discriminatory employment policies and practices" that may violate the WLAD, and it was "opening an inquiry to determine whether the University is meeting its obligations under state law." Am. Compl. Ex. A. The letter specifically stated that the AGO had "not made any determination as to whether the University has violated any law." *Id.* The letter requested specific documents and information related to the University's hiring practices and also requested a litigation retention hold. *Id.* The Ninth Circuit observed that this was "a clear sign of a substantial threat." *Seattle Pac. Univ.*, 104 F.4th at 60. Further, the Attorney General had not disavowed its intent to investigate and enforce the WLAD against the University. *Id.* After the lawsuit was filed, in response, the AGO issued a press release soliciting more complaints of possible employment discrimination by the University. Am. Compl. Ex. D. There has been a significant change since that time.

The AGO has since completed its investigation and concluded that it will not take enforcement action. Melody Decl., ECF No. 75. The AGO's Civil Rights Division Chief testified that the inquiry was opened due to complaints related to the University's employment practices. *Id.* ¶¶ 3-4. Upon review of the evidence and information produced by the University, the AGO determined that the University's current employment actions appear to comply with the law, with the only exceptions being apparent outliers more than six years old. *Id.* ¶ 6. The AGO closed the inquiry and has no other pending inquiries into the University's employment practices. *Id.* ¶¶ 6.-7 The Division Chief attests that the AGO "will not file suit against [the University] seeking to

ORDER DISMISSING CASE FOR LACK OF JURISDICTION
- 12

enforce the Washington Law Against Discrimination related to [the University's] use of its statement of faith or employee conduct standards." *Id.* ¶ 6.

The AGO declares that there is no credible threat of enforcement. At summary judgment, the Court has the benefit of evidence (rather than allegations) to assist its determination of whether there was a true "case or controversy" when the lawsuit was filed. *Lujan*, 504 U.S. at 569 n.4. Here, the evidence presented to the Court on summary judgment does not reveal an injury, such as showing that the AGO's letter had a chilling effect that caused the University to censor itself or modify its practices, but the Court observes that the AGO's letter represented a specific warning or threat of litigation at the time the University filed its lawsuit.

### C.  History of past enforcement

"The third factor to be considered is the history of enforcement under the statute." *Thomas*, 220 F.3d at 1140. This factor "carries little weight when the challenged law is relatively new and the record contains little information as to enforcement." *Tingley*, 47 F.4th at 1069. And "enforcement history alone is not dispositive." *LSO*, 205 F.3d at 1155 (citing *Babbitt*, 442 U.S. at 302). The AGO asserts that it has never enforced the WLAD against a religious employer. Jeon Decl. Ex. 15, Melody Depo. 75:24-25; 76:1-16. The University presents no evidence of prior enforcement.

### D.  In sum, the threat is speculative rather than substantial

The Court has considered the evidence placed before it, which shows that the University has not taken actions in accordance with its lifestyle expectations policy that resulted in violations of the WLAD. The possibility of future violations is speculative. The AGO has not enforced the WLAD and now disavows any intent to enforce it against the University. Although the University

ORDER DISMISSING CASE FOR LACK OF JURISDICTION

- 13

sufficiently demonstrated standing at the pleadings stage, it has failed to submit evidence that raises a material question of fact regarding whether it faces "a realistic danger of sustaining a direct injury" as a result of the WLAD's operation or enforcement. *Thomas*, 220 F.3d at 1139. Because the University can no longer rely only on its pleadings, it fails to demonstrate the likelihood of an injury in fact that establishes a case or controversy before this Court.

Accordingly, this Court lacks jurisdiction to consider the merits of this case and will not consider the parties' remaining arguments.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant's motion for summary judgment, ECF No. 73, is GRANTED on the basis that this Court lacks jurisdiction;

2. Plaintiff's motion for summary judgment, ECF No. 79, is DENIED; and

3. This case is DISMISSED without prejudice for lack of jurisdiction.

DATED this 19th day of December 2025.

Barbara Jacobs Rothstein
United States District Judge